WRIGLEY'S STORES, INC., v. BOARD OF PHARMACY.

1. STATUTES—CONSTRUCTION—ADMINISTRATIVE AGENCY—RULES AND REGULATIONS.

An administrative agency, created by statute, has no power to change the meaning, effect and purpose of the statute by which it was created through adoption of definitions of articles which it was empowered to regulate.

2. DRUGS AND DRUGGISTS—WORDS AND PHRASES—CONSTRUCTION OF STATUTES.

Definition of "drug", contained in rules promulgated by the board of pharmacy that the term should include all medicines and preparations recognized in the United States Pharmacopoeia or National Formulary for internal or external use, and any substance or mixture of substances, intended to be used for the cure, mitigation, or prevention of disease of either man or other animals, a definition nearly identical to that contained in the State statute pertaining to the adulteration of drugs, had no effect in changing the scope, purpose and meaning of the pharmacy act respecting the exemptions set forth in latter act as explained in act regulating ownership of pharmacies (CL 1948, §§ 335.2, 338.418, 338.481; Administrative Code [1944], p 479).

3. STATUTES—WORDS AND PHRASES—DEFINITIONS—CONSTRUCTION.

A statutory definition of a term that is therein restricted by the phrase "as used in this act" must be understood as having lim-

REFERENCES FOR POINTS IN HEADNOTES

[1] 42 Am Jur, Public Administrative Law §§ 53, 77, 99.

[2, 4–9, 11] 17 Am Jur, Drugs and Druggists § 9.

[2, 4–9, 11] Construction and effect of statutes in relation to operation of drugstore, pharmacy, or chemical store without a registered pharmacist. 74 ALR 1084.

[3, 4] 50 Am Jur, Statutes §§ 261–265.

[8] 16 Am Jur, Declaratory Judgments §§ 23, 26.

[8] Declaration of rights or declaratory judgments. 12 ALR 52; 19 ALR 1124; 50 ALR 42; 68 ALR 110; 87 ALR 1205.

[9] 28 Am Jur, Injunctions §§ 74, 124, 162 et seq.

[10] 50 Am Jur, Statutes § 219.

[12] 14 Am Jur, Costs § 91.

ited the definition to the things mentioned in the act in which it was contained and not elsewhere.

4. DRUGS AND DRUGGISTS—DEFINITIONS—ADULTERATION OF DRUGS—REGULATION OF PHARMACIES.

The definition of the term "drug", as used in act to prohibit adulteration of drugs and drug products, was designed to prevent adulteration and fraud respecting patent and proprietary medicines and household remedies as well as such drugs as are sold under the supervision of a pharmacist, but, as such, was neither controlling nor applicable to the word "drug", as contained in the act regulating the practice of pharmacy (CL 1948, §§ 335.2, 338.401 *et seq.*).

5. SAME—CONSTRUCTION OF STATUTES.

Amendment of section of act regulating pharmacies which requires the licensing of persons engaged in "selling at retail drugs and poisons or compounding prescriptions, except those who are exempted from registration under" another section of the act which had been adopted theretofore, reaffirms, instead of repeals, such exemptions (PA 1885, No 134, § 5, as amended by PA 1921, No 120; § 18, as added by PA 1905, No 332).

6. SAME—CONSTRUCTION OF STATUTES—EXEMPTIONS—PATENT OR PROPRIETARY MEDICINES—HOUSEHOLD REMEDIES.

The specific exemption of sale of patent or proprietary medicines and ordinary domestic or household remedies as exempted from licensure provision in act regulating practice of pharmacy from application in act regulating ownership of pharmacies constitutes recognition by legislature of the continued and unrepealed status and validity of the exemption (PA 1885, No 134, § 5, as amended by PA 1921, No 120; § 18, as added by PA 1905, No 332; PA 1927, No 359).

7. SAME—PATENT OR PROPRIETARY MEDICINES—LICENSES—SALE.

The statute regulating the practice of pharmacy in permitting the sale of patent or proprietary medicine embraces the sale of prepackaged, nonprescription, mass-produced remedies put up for sale to the general public in the distinctive and original container, and under the trade name of the manufacturer as his product under the rules and conditions set forth in the act without the supervision of a registered pharmacist and is not limited to preparations protected by letters patent or consisting of a secret, privately-owned formula, or manufacturing process (CL 1948, § 338.418).

8. ACTION—DECLARATION OF RIGHTS—PHARMACY—PATENT OR PRO-
PRIETARY MEDICINES—HOUSEHOLD REMEDIES—RETAIL SALES.

A declaration of rights by a court is appropriate, where there
exists a bona fide disagreement and dispute between grocery
store operators and State board of pharmacy as to whether sale
at retail of patent or proprietary medicines and enumerated
household remedies must be under the supervision of registered
pharmacists, in order to avoid multiplicity of suits, and in the
interest of an orderly and consistent administration of the
act regulating the practice of pharmacy (CL 1948, § 338.418;
Administrative Code [1944], p 479).

9. DRUGS AND DRUGGISTS—STATUTORY EXCEPTIONS—CONSTRUCTION
OF STATUTES—INJUNCTION.

Plaintiff grocery store owners are entitled to injunctive protec-
tion by courts from threatened prosecution by State board of
pharmacy for sale of prepackaged, nonprescription, ordinary
household remedies without the supervision of a licensed phar-
macist, where it can fairly be shown to the court that such
articles actually fall within the general terms of the exemptions
and exceptions of the statute regulating the practice of phar-
macy (CL 1948, § 338.418).

10. STATUTES—CONSTRUCTION.

The interpretation of general terms included in an excepting
and exempting provision of a regulatory statute is a judicial
function.

11. DRUGS AND DRUGGISTS—RETAIL SALES—EXEMPTED ARTICLES.

Sale at retail, subject to rules and conditions of the statute reg-
ulating the practice of pharmacy, may be made without the
supervision of a registered pharmacist of patent and proprie-
tary medicines and other articles exempted in the statute by
specific and general terms as interpreted by the court, pro-
vided the sale be made in the original package or container
of the manufacturer under his distinctive name, brand or trade
mark and as his product subject to present and future regula-
tions of the legislature (CL 1948, § 338.418).

12. COSTS—PUBLIC QUESTION—CONSTRUCTION OF STATUTE—REGULA-
TION OF PHARMACY.

No costs are allowed in suit to restrain State board of phar-
macy from prosecuting plaintiff grocery store owners for sale
of certain articles without supervision by a registered phar-
macist and for a declaration of rights, a public question being
involved (CL 1948, § 338.418).

Appeal from Wayne; Weideman (Carl M.), J.
Submitted April 14, 1953. (Docket No. 26, Calendar
No. 45,435.) Decided June 8, 1953.

Bill by Wrigley's Stores, Inc., a Michigan corporation, and other store operators against Michigan
Board of Pharmacy and others for declaratory decree determining rights under pharmacy act and
restraining defendants from applying provisions of
the act against sale by plaintiffs of patent and proprietary medicines and household remedies. Decree
for plaintiffs. Defendants appeal. Affirmed.

*Irwin I. Cohn* (*John Sklar,* of counsel), for plaintiffs.

*Frank G. Millard,* Attorney General, *Edmund E.
Shepherd,* Solicitor General, and *Ernest O. Zirkalos,*
Assistant Attorney General, for defendants.

REID, J. Plaintiffs, grocery store operators, filed
a bill in the Wayne county circuit court for a declaratory decree construing and determining rights
under the Michigan pharmacy act, PA 1885, No 134,
as amended, and for an injunction restraining the
defendant board (hereinafter referred to as defendant) from applying the pharmacy act against plaintiffs respecting the sale of patent or proprietary
medicines or drugs and ordinary domestic or household remedies, under section 18 of the pharmacy
act (CL 1948, § 338.418 [Stat Ann § 14.740]), as
explained in the last proviso in CL 1948, § 338.481
(Stat Ann § 14.771). From a decree for plaintiffs,
defendant appeals.

Section 18, CL 1948, § 338.418 (Stat Ann § 14.740),
is as follows:

"Nothing in this act shall apply to the practice of a practitioner of medicine, who is not the proprietor of a store for the dispensing or retailing of drugs, medicines and poisons, or who is not in the employ of such proprietor, and shall not prevent practitioners of medicine from supplying their patients with such articles as they may deem proper, or to the sale of Paris green, white hellebore and other poisons for destroying insects, or any substance for use in the arts, or the manufacture and sale of proprietary medicines, or to the sale by merchants of ammonia, bicarbonate of soda, borax, camphor, castor oil, cream of tartar, dye stuffs, essence of ginger, essence of peppermint, essence of wintergreen, non-poisonous flavoring essence or extracts, glycerine, licorice, olive oil, sal ammoniac, saltpetre, sal soda and sulphur, except as herein provided: Provided, however, That in the several towns of this State, where there is no registered pharmacist within 5 miles, physicians may compound medicines, fill prescriptions, and sell poisons, duly labeling the same as required by this act, and merchants and drug dealers may sell any drugs, medicines, chemicals, essential oils, and tinctures which are put up in bottles, boxes, packages, bearing labels securely affixed, which labels shall bear the name of the pharmacist putting up the same, the dose that may be administered to persons 3 months, 6 months, 1 year, 3 years, 5 years, 10 years, 15 and 21 years of age, and if a poison, the name or names of the most prominent antidotes; and to the sale by such merchant of copperas, borax, blue vitriol, saltpetre, pepper, sulphur, brimstone, Paris green, liquorice, sage, senna leaves, castor oil, sweet oil, spirits of turpentine, glycerine, glauber salts, epsom salts, cream of tartar, bicarbonate of soda, sugar of lead and such acids as are used in coloring and tanning, paregoric, essence of peppermint, essence of ginger, essence of cinnamon, hive syrup, syrup of ipecac, tincture of arnica, syrup of tolu, syrup of squills, spirits of camphor, sweet spirits of nitre, quinine, and all other

preparations of cinchona bark, tincture of aconite and tincture of iron, or quinine pills, and to the sale of carbolic acid, laudanum, sugar of lead, oxalic acid, duly labeling and registering the same as required by this act; and to the sale of any patent or proprietary medicines."

Defendant claims that the plaintiffs may not lawfully sell the articles exempted in CL 1948, § 338.418 (Stat Ann § 14.740), as explained by CL 1948, § 338.-481 (Stat Ann § 14.771), without their store being in charge of pharmacists registered under the pharmacy act. Defendant further claims the defendant properly adopted a definition of the word "drug" in the rules promulgated by it as follows:*

"The term 'drug' shall include all medicines and preparations recognized in the United States Pharmacopoeia or National Formulary for internal or external use, and any substance, or mixture of substances, intended to be used for the cure, mitigation, or prevention of disease of either man or other animals."

The pharmacy act, PA 1885, No 134 (CL 1948, § 338.401 et seq. [Stat Ann § 14.721 et seq.]), was amended by PA 1905, No 332, and by PA 1921, No 120. See, also, PA 1923, No 85 (CL 1948, § 446.301 et seq. [Stat Ann § 19.611 et seq.]), concerning travelling vendors or hawkers.

The pharmacy act contained no definition of the word "drug." PA 1909, No 146 (CL 1948, § 335.1 et seq. [Stat Ann § 14.781 et seq.]), contained the definition (CL 1948, § 335.2 [Stat Ann § 14.782]):

"The term 'drug' as used in this act shall include all medicines and preparations recognized in the United States Pharmacopoeia or National Formulary for internal or external use, and any substance or mixture of substances or device intended to be

---

* Administrative Code (1944), p 479.—Reporter.

used for the cure, mitigation or prevention of disease of either man or other animals."

Defendant claims that the adoption of the definition of the word "drug" in the act of 1909, being an act in *pari materia* with the pharmacy act, in effect requires and effectuates that the word drug in the pharmacy act must be construed to mean the same as the definition set forth in P.A. 1909, No 146, above cited.

Defendant further claims that if we shall construe that the word drug as used in the pharmacy act means the same as the definition set forth in P.A. 1909, No 146, then the phraseology in other portions of the pharmacy act are such as to make section 18 inconsistent with and repugnant to previous sections of the pharmacy act and that the exemptions or exceptions contained in section 18 are therefore ineffectual, and that section 18 is in practical effect, repealed by the enactment of P.A. 1909, No 146.

Defendant further claims that it had authority under the pharmacy act to adopt the definition of the word drug, hereinbefore quoted, as adopted by defendant, and that such definition is usable and effectual to change the meaning of the pharmacy act and that said board's definition, so used and applied, shall likewise have the effect of rendering the exemptions of section 18 of the pharmacy act, as amended by P.A. 1905, No 332, practically inoperative and eliminated from the pharmacy act.

We deem that the defendant board had no power, by adoption of a definition of the word drug, to change the meaning, effect and purpose of the pharmacy act under which the defendant board was created. The definition adopted by defendant has no effect in changing the scope, purpose and meaning of the pharmacy act respecting the exemptions set

forth in section 18, as explained by CL 1948, § 338.-481 (Stat Ann § 14.771), hereinafter quoted.

PA 1909, No 146, above referred to, in setting forth its definition of the word drug, gave that definition with the restriction, "the term 'drug' as used in this act," so that the legislature must be understood to have limited the definition as contained in Act No 146 to the things mentioned in that act and not to have intended that the definition in that act should be construed or used as explaining the meaning of the word drug as contained in the pharmacy act.

PA 1909, No 146, was enacted, "to prohibit and prevent adulteration, misbranding, fraud and deception in the manufacture and sale of drugs and drug products," in Michigan. The legislature must have considered that it was very important to prevent adulteration and fraud respecting patent and proprietary medicines and household remedies as well as such drugs as are sold under the supervision of a pharmacist, and the legislature could be considered as adopting a particular definition of the word "drug" for the purpose of that act, Act No 146, for the sake of clarity, and certainty and scope in the prosecution of violators of that act.

Neither the definition in PA 1909, No 146, nor the definition much to the same purpose adopted by the board, is controlling of nor applicable to the word "drug" as contained in the pharmacy act.

Defendant further claims that the first full sentence in section 5 of the pharmacy act, as amended by PA 1921, No 120 (CL 1948, § 338.405 [Stat Ann § 14.725]), shall be so construed as to render nugatory and ineffectual the exemptions in section 18, said sentence being as follows:

"Sec. 5. From and after the first day of July, 1921, it shall be unlawful for any person, firm or

corporation to engage in the business of selling at retail, drugs and poisons or compounding prescriptions, except those who are exempted from registration under section 18 of this act, without first securing from the State board of pharmacy a license as hereinafter provided for each separate place in which said business is to be carried on."

We feel compelled to find against this claim also of the defendant. Section 5 of the act, as amended by PA 1921, No 120, reaffirms the exemptions of section 18, and does not repeal those exemptions.

After the enactment of PA 1909, No 146, of PA 1921, No 120, and after the adoption by the defendant board of its definition, which 3 things defendant erroneously counts on to show a repeal of section 18, the legislature of the State in 1927* enacted CL 1948, § 338.481 (Stat Ann § 14.771), in which the last proviso is:

"That this act shall not apply to stores or shops in which patent or proprietary medicines and ordinary domestic or household remedies, such as the sale of is provided for in section 18 of Act No 134, Public Acts of 1885 [evidently meaning, as added by PA 1905, No 332], are the only drugs and medicines sold at retail."

The adoption, therefore, of the act of 1927, after the things had occurred which defendant counts on as repealing or rendering nugatory the exemptions expressly listed or outlined in section 18, is a recognition by the legislature of the continued and unrepealed status and validity of section 18, as set forth in PA 1905, No 332.

Defendant claims that the words, "patent or proprietary medicines," as used in the exemptions in section 18 embrace only preparations protected by

* PA 1927, No 359.—REPORTER.

letters patent or consisting of a secret, privately-owned formula, or manufacturing process.

An expert witness for defendant testified that by the term "proprietary medicine" is meant that there is a proprietorship right existing either in a patent, in a trade name, in a copyright, or in the individual's personal name, and not in the established preparation itself, with which statement by defendant's witness, the plaintiffs seem to agree.

It is made clear by testimony that patented medicines are very rare; the method now in use is to register the formula and not to patent the medicine.

We conclude that the permission given by section 18, to sell patent or proprietary medicines, was not intended to be limited to the rare class of patented medicines or secret formulas, but does include authorization to sell prepackaged, nonprescription, mass-produced remedies put up for sale to the general public in the distinctive and original container, and under the trade name of the manufacturer as his product under the rules and conditions set forth in the act.

The intent of the legislature is disclosed (all of the acts hereinbefore recited or referred to, being considered) as permitting ordinary or domestic household remedies as well as so-called patent or proprietary medicines, to be sold without the supervision of a registered pharmacist, under the rules and conditions set forth in the pharmacy act.

Defendant concedes that because of the existence of a bona fide disagreement and dispute as to the meaning and effect of the pharmacy act, and to avoid multiplicity of suits, and in the interest of an orderly and consistent administration of the act, a declaration of rights is appropriate in this cause and it appears that defendant will proceed against plaintiffs if plaintiffs make sales within the exemptions of

section 18, if the sales are not supervised by a registered pharmacist.

Defendant claims that only the legislature may determine any particular article as coming within the meaning of the exemptions of section 18. However, in view of the threat practically of prosecution for the sale of a great many specific articles that are mentioned in the pleadings, the plaintiffs are entitled to the protection of the court against such threatened prosecution when they can with a fair degree of clarity show to the court that the articles do actually fall within the general terms of the exemptions and exceptions of section 18, as explained in CL 1948, § 338.481.

The court's decree in paragraphs 6, 7 and 8 (among other things) after setting forth defendant's definition of the word drug, as hereinbefore set forth, recited:

"However suitable the foregoing definition may be for the purpose of pure food and drug laws, it is not a proper basis upon which to assert exclusive or monopolistic selling rights in ordinary household preparations or remedies on the part of pharmacists. Thus preparations 'recognized' in the United States Pharmacopoeia or National Formulary include such common household items as vinegar, corn starch, gelatin, honey, nutmeg, olive oil, soap, baking soda, salt, sugar, caramel, milk, eggs, vanilla, chocolate syrup, et cetera. Similarly, as shown by the testimony of medical experts in this cause, substances or mixtures of substances 'for the cure, mitigation or prevention of disease of either man or other animals' may include items of diet or food, gelatin, soothing preparations such as corn starch, fats, et cetera, cleansing agents such as soap, and numerous other items referred to in the testimony in this cause.

"7. That among preparations currently in dispute between the parties to this cause are (bill of complaint, paragraphs 11, 13, 14 and 15) aspirin, rubbing

or isopropyl alcohol, milk of magnesia, boric acid, tincture of iodine, peroxide of hydrogen, oil of wintergreen, witch hazel, mineral oil, camphorated oil, mustard powders, American oil, cod liver oil, epsom salts, citrate of magnesia, Ex-Lax, Feenamint, Vaseline and/or petroleum jellies, alum, sweet oil, liniment, spices, cream of tartar and Lysol. That these products are procured by merchants and pharmacists from common or similar sources, are sold in the original package or container of the manufacturer under his distinctive name, brand or trade-mark and as his product, are legally salable to the general public without restriction, and fall within the common understanding and legal meaning of the words patent or proprietary medicines as hereinbefore defined. That these preparations are ordinary domestic or household remedies and are generally similar to or within the classification of preparations expressly made salable by merchants in section 18 of the pharmacy act. That said disputed items, preparations or remedies are no more dangerous and in most instances are less dangerous, than those made salable by merchants under section 18, *supra,* and no valid or reasonable basis exists or is established by any evidence in this cause for prohibiting the sale of those preparations named in the bill of complaint, while permitting sale of those preparations listed as permissible in section 18. (This in fact being conceded in defendant's brief.)

"8. The evidence herein further establishes, and the court hereby finds, that the packaged preparations and remedies in dispute herein are commonly sold in drug stores to the general public by or through ordinary clerks or sales persons unlicensed and untrained as pharmacists, frequently upon open counters or bins under a serve-self arrangement whereby the customer selects the articles desired and pays for them. That there is no important difference in the handling and selling of these prepackaged, nonprescription, remedies or preparations as between druggists and merchants who are

not licensed as pharmacists; that there is no pharmaceutical intervention or service at the retail level in connection therewith, and that the sales to the general public, whether by pharmacists or merchants, involve merely a retailing rather than a pharmaceutical function and service."

The court found:

"It appears from the pleadings that preparations now currently in dispute, as between the parties hereto, include * * * aspirin, rubbing or isopropyl alcohol, milk of magnesia, boric acid, tincture of iodine, peroxide of hydrogen, oil of wintergreen, witch hazel, mineral oil, camphorated oil, mustard powders, American oil, cod liver oil, epsom salts, citrate of magnesia, Ex-Lax, Feenamint, Vaseline and/or petroleum jellies, alum, sweet oil, liniment, spices, cream of tartar and Lysol. The evidence shows beyond dispute that many of these preparations have nonmedical as well as medical uses and are packaged by the manufacturers with directions printed for ordinary domestic purposes as well as for medical purposes. The evidence shows that in drug stores, as in ordinary retail stores, such preparations are sold without restriction to the general public, commonly through or by ordinary clerks or sales persons unlicensed and untrained as pharmacists; that frequently such products are on open counters or bins in drug stores under a serve-self arrangement, whereby the customer selects articles desired and pays for them.

"It is further undisputed that the products are such as are salable without restriction to the general public; that they are obtained by merchants and druggists from the same or similar sources; that they are sold in the original unbroken or unopened container of the manufacturer, properly labeled as to ingredients and method of use, and under the manufacturer's name, brand or trade-mark.

"It is evident from the record that there is no important difference between the handling and sell-

ing of these preparations as between druggists and merchants who are not licensed as pharmacists.; that there is no pharmaceutical service or intervention upon the part of the druggist in the selling of these preparations, there being involved a retailing rather than a pharmaceutical function.

"The law imposes no requirement upon the clerks in drug stores to open or analyze the contents of the packages they sell, and the court can see no greater evil in the sale to the public of such articles by a clerk in the grocery store than by a clerk in a drug store."

The legislature by its various acts has indicated that there is no greater evil in the sale without restriction to the public of such articles exempted in section 18 and those hereinbefore listed, by a clerk in other than drug stores but in obedience to the rules and conditions of the act, than there is in a sale without restriction by a clerk in a drug store under the supervision of a registered pharmacist.

The decree appealed from construed the pharmacy act as permitting plaintiffs without supervision of a registered pharmacist to sell, and perpetually enjoined defendant from interfering with such sale, all articles expressly enumerated in section 18 and also the articles recited in the portions of the opinion and decree hereinbefore quoted. The quoted lists are not to be considered as excluding other articles which are patent or proprietary medicines or ordinary domestic or household remedies. These products must be sold in the original package or container of the manufacturer under his distinctive name, brand or trade mark and as his product, and of course, subject to present or future requirements of the legislature.

The decree appealed from is affirmed.  A matter of public interest being involved, no costs are allowed.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, BUSH-NELL, SHARPE, and BOYLES, JJ., concurred.