*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

EAGLE TOWNSHIP,

        Plaintiff-Appellee,

v

SHAUN VANALSTINE,

        Defendant-Appellant.

UNPUBLISHED
April 30, 2026
2:53 PM

No. 375687
Clinton Circuit Court
LC No. 2024-012489-CZ

Before: RIORDAN, P.J., and REDFORD and PATEL, JJ.

PER CURIAM.

Defendant, Shaun VanAlstine, built a structure on his property in Eagle Township, Michigan without the proper permitting and in violation of the Eagle Township Interim Zoning Ordinance (IZO)'s size and setback requirements. Plaintiff, Eagle Township, brought this action seeking declaratory and injunctive relief. The township moved for summary disposition under MCR 2.116(C)(10) and requested an injunction to abate the zoning violations by removing the structure. The trial court granted the township's motion, ordered VanAlstine to remove the structure, authorized the township to enter the property to abate the violations if VanAlstine failed to do so, and awarded the township its costs and attorney fees. VanAlstine appeals by right the trial court's order. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

VanAlstine is the record owner of the subject property, which is approximately 2.43 acres and located in an agricultural zoning district. Although the property does not conform to the 10-acre minimum lot size for the agriculture district, it is considered to be a legal nonconformity because the parcel existed before the township's adoption of the IZO, which became effective on January 1, 2024. Previously, Clinton County promulgated all zoning regulations for the township. All exterior construction work within the township requires a zoning permit approved by the township's zoning administrator. The zoning permit must be obtained before applying for a building permit from the county.

Early in 2024, VanAlstine planned to build an addition to the existing pole barn on the property. He intended to use the addition to store and maintain work vehicles and equipment. In

March 2024, VanAlstine's wife, Brittney, contacted Joel Haviland, Clinton County's building official, and informally inquired about the required setbacks for an addition to an existing pole barn. She did not provide any information about the property address, the lot size, the size of the current pole barn, or the size of the proposed addition. Haviland responded:

> The minimum front yard setback is 83", measuring from the center of the road. However, there are many other requirements for barns that you will need to consider. Please see the link below to Clinton County Zoning requirements for Accessory Buildings (barn) section 4.1.

Brittney clarified, "The add on of the polebarn [sic] will be toward the road and not toward any other structure. So essentially, it needs to be 83" from the center of the roadway and all of the matching structure colors and roofing material[?]" Haviland responded, "Yes, that is correct. Let me know if you need anything else."

On June 9, 2024, Brittney e-mailed Haviland to inquire about obtaining a permit to build the addition. The following day, Haviland e-mailed Brittney the applications and instructed her to provide the construction plans and site plan with the completed applications for consideration. A few hours later, Brittney inquired whether the permits should be requested through the township or the county.

VanAlstine began constructing the addition before applying for a zoning permit from the township or a building permit from the county. On July 1, 2024, after construction of the addition was mostly complete, VanAlstine applied to the township for a zoning permit. VanAlstine reported that the proposed addition would be 18 feet tall, 40 feet wide, and 60 feet long.

On July 10, 2024, the zoning administrator denied the application.[1] The zoning administrator stated that the existing pole barn was "considered as a legal non-conforming structure due to the placement of the structure within the required front yard." The zoning administrator explained that the minimum front yard setback was 50 feet, but the proposed addition would only be approximately 24 feet from the right-of-way. The zoning administrator also stated that the maximum floor area of an accessory structure for the property was approximately 2,654 square feet,[2] but the existing pole barn was approximately 2,160 square feet of floor area and the proposed addition would be an additional 2,400 square feet of floor area. The application was denied because the addition would violate the minimum front yard setback, exceed the maximum floor area for accessory buildings on the property, and would unlawfully expand the legally nonconforming structure toward the front lot line.

---

[1] McKenna, a planning firm, serves as the township's zoning administrator.

[2] The township alleged in its complaint that detached accessory buildings were limited to a total square footage of 3,708 feet, which was confirmed by Skunda. Regardless of the discrepancy in the maximum square footage allowed, the 4,560 total square footage of the detached accessory structures clearly exceeded the limit.

Following the zoning permit denial, VanAlstine applied for three variances: (1) a variance to reduce the required front yard setback from 50 feet to 24 feet; (2) a variance to increase the allowable square footage of accessory buildings on the site to 4,560 square feet; and (3) a variance to expand a legal nonconforming structure. VanAlstine maintained that the county zoning commissioner had stated that the proposed addition followed all guidelines for Clinton County, the neighbors all agreed to the addition, and the addition would not interfere with any roadway travel or safety. On August 8, 2024, the township issued a stop work order to halt construction of the structure. On August 26, 2024, the township Zoning Board of Appeals (the ZBA) held a public hearing on the variance application. The ZBA adopted the findings of the zoning administrator, and denied the variance requests. VanAlstine did not appeal the ZBA's decision.

On September 11, 2024, Ken Skunda, the township's code enforcement officer, sent a letter to VanAlstine stating that the pole barn addition violates the IZO and demanded that it be removed from the property by October 11, 2024. Skunda stated that the township would take legal action to abate the nuisance and enforce the IZO if the structure was not removed by the deadline. VanAlstine did not remove the structure.

In December 2024, the township commenced this action alleging that the pole barn addition violated the IZO and thus was a nuisance per se. The township further alleged that VanAlstine continued building the structure in violation of the stop work order. The township sought a declaration that the structure was a nuisance per se and requested an injunction to enjoin construction. On January 7, 2025, the parties stipulated to a preliminary injunction enjoining VanAlstine from continuing construction.

In his answer to the township's complaint, VanAlstine admitted that he constructed the structure without a zoning or building permit but maintained that he acted in a good faith manner. He also admitted to the size and location of the structure. VanAlstine maintained that construction was completed before the stop work order was issued. He contended that any additional steps taken after the stop work order were simply "to protect the already-built structure," and denied that any further construction was done. VanAlstine asserted a series of affirmative defenses, including equitable estoppel, regulatory taking, and arguments contesting the equity of the township's request that the structure be removed.

The township moved for summary disposition under MCR 2.116(C)(10) arguing that there were no genuine issues of material fact whether the structure violates the IZO and thus is a nuisance per se. The township requested an injunction to abate the zoning violations by removing the structure. In response, VanAlstine maintained that he relied in good faith on his wife's communications with Haviland about the setback requirements, which were incorrect. VanAlstine argued that he had a right to conduct discovery to develop his affirmative defenses. For example, he contended that the township's denial of his zoning permit and his variance application resulted in a regulatory taking. He asserted that he should be afforded "the chance to prove his affirmative defense by presenting evidence of the impact of the Township's actions on his investment-backed expectations, the economic impact of the Township's action, and the character of the Township's actions." The township replied that discovery would be futile because VanAlstine admitted that he built the structure without a zoning or building permit, did not dispute the size and location of the structure, and acknowledged that the structure remained on the property. The township argued that VanAlstine was liable for a nuisance per se regardless of his alleged defenses.

Following a hearing, the trial court granted the township's motion, ordered VanAlstine to remove the structure, authorized the township to enter the property to abate the violations if VanAlstine failed to do so, and awarded the township its costs and attorney fees. This appeal followed.

## II. STANDARDS OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition under MCR 2.116(C)(10) is warranted when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *El-Khalil*, 504 Mich at 160 (cleaned up). When reviewing a motion for summary disposition under MCR 2.116(C)(10), a court must consider the evidence submitted by the parties in the light most favorable to the nonmoving party. *Id*. Summary disposition should be granted when, after reviewing the evidence in the light most favorable to the nonmoving party, there are no remaining issues of material fact and the moving party is entitled to judgment as a matter of law. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016).

The interpretation and application of an ordinance poses a question of law, which we also review de novo. *Great Lakes Society v Georgetown Charter Twp*, 281 Mich App 396, 407; 761 NW2d 371 (2008).[3] Nuisance-abatement proceedings are generally equitable in nature, and equitable rulings are reviewed de novo, but we review for clear error any underlying factual findings rendered by a court in support of its decision. *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 270; 761 NW2d 761 (2008). Whether an act or condition constitutes a nuisance per se is a question of law. *Id*. at 269.

Finally, "a trial court's decision to grant injunctive relief is reviewed for an abuse of discretion." *Dep't of Environmental Quality v Gomez*, 318 Mich App 1, 32; 896 NW2d 39 (2016). "An abuse of discretion occurs when the court's decision falls outside the range of reasonable and principled outcomes." *Id*. at 33-34 (cleaned up).

## III. ANALYSIS

VanAlstine argues that the trial court erred by concluding that the structure constitutes a nuisance per se and abused its discretion by ordering removal of the structure. We disagree.

The township's complaint alleged that the structure violated the IZO and thus was a nuisance per se. A nuisance per se is "an act, occupation, or structure which is a nuisance at all

---

[3] "Ordinances are treated as statutes for the purposes of interpretation and review." *Great Lakes*, 281 Mich App at 407. "The goal of statutory construction, and thus of construction and interpretation of an ordinance, is to discern and give effect to the intent of the legislative body." *Id*. at 407-408. "Terms used in an ordinance must be given their plain and ordinary meanings[.]" *Id*. at 408.

times and under any circumstances, regardless of location or surroundings." *Ypsilanti*, 281 Mich App at 269 n 4 (cleaned up). Under the plain language of § 407 of the Michigan Zoning Enabling Act, MCL 125.3101 *et seq*., "a structure erected in violation of a zoning ordinance constitutes a nuisance per se," *Morse v Colitti*, 317 Mich App 526, 554; 896 NW2d 15 (2016), and a court shall order it abated:

> Except as otherwise provided by law, a use of land or a dwelling, building, or *structure*, including a tent or recreational vehicle, used, *erected*, altered, razed, or converted *in violation of a zoning ordinance or regulation adopted under this act is a nuisance per se*. The court *shall* order the nuisance abated, and the owner or agent in charge of the dwelling, building, structure, tent, recreational vehicle, or land is liable for maintaining a nuisance per se. [MCL 125.3407 (emphasis added).]

As the moving party, the township bore the initial burden to identify the issues about which there were no material factual disputes and provide supporting evidence. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369-370; 775 NW2d 618 (2009). The township maintained that VanAlstine erected the structure without the proper permitting and in violation of the IZO's size and setback requirements, which constituted a nuisance per se. Section 6.02.C.1 of the IZO generally prohibits detached accessory buildings and structures in any front yard, unless one of two sets of conditions are met. Eagle Township Ordinance 03-2023, § 6.02.C.1.[4] The existing pole barn is a detached accessory structure in the property's front yard.

---

[4] Section 6.02.C.1 of the IZO states:

(C) Detached Accessory Buildings.

(1) Location. Detached accessory buildings and structures shall not be located in a front yard, except if one of the following sets of conditions are met:

(a) Condition Set One:

(i) The parcel exceeds five (5) acres in lot area; and

(ii) All setback requirements of the district in which the accessory structure is to be located are complied with; and

(iii) The accessory structure shall be located not less than two-hundred and twenty-five (225) feet from the road right-of-way; and

(iv) The accessory structure shall be located no closer than fifty (50) feet to an existing residential structure on an adjacent parcel.

(b) Condition Set Two:

It does not meet either set of criteria § 6.02.C.1, but it is considered a legal nonconforming structure because it was constructed before the township adopted the IZO.[5] Although it is a legal nonconforming structure, the pole barn can remain in place and be used. However, § 7.04.A of the IZO prohibits enlarging, extending, or structurally altering any nonconforming structure. Eagle Township Ordinance 03-2023, § 7.04.A[6] The township presented evidence that the structure

> (i) Accessory structure exterior siding generally matches the color of the principal structure of which it is accessory to; and
>
> (ii) Accessory structure roofing material generally matches the color of the principal structure of which it is accessory to; and
>
> (iii) Accessory structure must meet the minimum front yard setback of a principal structure in the district that it is located and must be located no more than seventy-five (75) feet from the principal structure; and
>
> (iv) The accessory structure shall be located no closer than fifty (50) feet to an existing residential structure on an adjacent parcel; and
>
> (v) No more than twenty (20) percent of an accessory structure floor area shall be located within an area defined as between the principal structure's front building line and the public right-of-way and the principal structures side building lines so as to not obstruct the view of the principal structure from the public road right-of-way. [Eagle Township Ordinance 03-2023, § 6.02.C.1.]

[5] Condition set one is not met because the property is less than five acres. Condition set two is not met because the existing pole barn has more than 20% of its floor area within the front yard.

[6] Section 7.04.A of the IZO states in pertinent part:

> (A) No nonconforming use or structure shall be enlarged, extended, or structurally altered, nor shall any nonconformity be changed to a different nonconformity which increases the intensity of use or nonconformity, except as permitted in this Section.
>
> * * *
>
> (4) Enlargement, Extension, or Alteration.
>
> > (a) Increase in Nonconformity Prohibited. Except as specifically provided in this section, no person may engage in any activity that causes an increase in the extent of any nonconformity. For example, physical alteration of structures or the placement of new structures on open land is unlawful if such activity results in:

violated the IZO because it did not meet the minimum front yard setback requirement and enlarged a nonconforming structure. In both sets of criteria for allowing an accessory building in a front yard, § 6.02.C.1 states that the accessory building must meet the minimum front yard setback requirement for principal buildings. In the agricultural zoning district, the minimum front yard setback requirement is 50 feet. The existing pole barn has setback of approximately 80 feet and thus meets the requirement. But the addition reduced the setback to 24 feet. VanAlstine knew that the addition did not comply with the IZO because he applied for a variance from § 6.02.C.1 to reduce the required front yard setback from 50 feet to 24 feet. He also applied for a variance from § 7.04.A to expand a legal nonconforming structure. Both requests were denied, and VanAlstine did not appeal either denial.

The township also presented evidence that the structure violated the IZO's square-foot limitations for accessory buildings. Section 6.02.C.5 of the IZO limits the total floor area of accessory buildings on lots larger than one acre but smaller than five acres to 1,600 square feet plus an additional two square feet of floor area for every 100 square feet of lot area, up to 5,000 square feet. Eagle Township Ordinance 03-2023, § 6.02.C.5.[7] Because the property is

---

(i) An increase in the total amount of space devoted to a nonconforming use, or

(ii) Greater nonconformity with respect to dimensional restrictions, such as setback requirements, height limitations, density requirements, or other requirements in the district in which the property is located.

(b) Permitted Extension. Any nonconforming use may be extended throughout any part of a building which was manifestly arranged or designed for such use at the time of adoption or amendment of this Ordinance, but no such use shall be extended to occupy any land outside such building. No nonconforming use of land shall be enlarged, increased, or extended to occupy a greater area of land, nor shall any such use be moved in whole or in part to any portion of the lot or parcel than was occupied on the effective date of this Ordinance or amendment thereto.

(c) Alterations that Decrease Nonconformity. Any nonconforming structure or any structure or portion thereof containing a nonconforming use, may be altered if such alteration serves to decrease the nonconforming nature of the structure or use. [Eagle Township Ordinance 03-2023, § 7.02.A.]

[7] Section 6.02.C.5 of the IZO states:

**Size**. The total of all detached accessory buildings located on a parcel shall be subject to maximum lot coverage requirements and accessory structure size shall

approximately 2.43 acres, all detached accessory buildings are limited to 3,708 total square feet. The existing pole barn is 2,160 square feet, and the addition's floor area is approximately 2,400 square feet. The total square footage of detached accessory structures on the property is 4,560 square feet, which violates § 6.02.C.5. VanAlstine knew that the structure did not comply with § 6.02.C.5 because he applied for a variance to increase the allowable square footage of accessory buildings on the site to 4,560 square feet. The ZBA denied the request, and VanAlstine did not appeal the denial.

Additionally, all exterior construction work within the township requires a zoning permit approved by the township's zoning administrator. The zoning permit must be obtained before applying for a building permit from the county. Eagle Township Ordinance 03-2023, § 14.02.[8] VanAlstine did not obtain a zoning or a building permit. His July 1, 2024 zoning permit application was denied on July 10, 2024.[9] According to VanAlstine, "The structure was mostly complete by July 14, 2024."

The township met its initial burden of establishing that the structure was erected in violation of the IZO and thus was a nuisance per se under MCL 125.3407. See *Morse*, 317 Mich App at 554. Accordingly, the burden shifted to VanAlstine as the nonmoving party to present evidence that a factual dispute remained to be resolved by the finder of fact. See *Barnard Mfg*, 285 Mich App at 370. VanAlstine conceded that he did not obtain the necessary permits and that the structure violated the IZO's size and setback requirements. Because there were no genuine

---

be subject to the restrictions in floor area based upon parcel size listed in the schedule below.

| MAXIMUM FLOOR AREA OF ACCESSORY BUILDINGS | |
|---|---|
| Parcel (Lot) Size | Total Accessory Floor Area ↔ |
| One-half (1/2) acre or less | 1,200 sq. ft. |
| More than one-half (1/2) and less than one (1) acre | 1,600 sq. ft. |
| More than one (1) acre and less than five (5) acres | 1,600 sq. ft. plus 2 sq. ft. of floor area for 100 sq. ft. of lot area not to exceed 5,000 sq. ft. |
| More than five (5) acres | 1,600 sq. ft. plus 2 sq. ft. of floor area for 100 sq. ft. of lot area not to exceed 7,500 sq. ft. |

[Eagle Township Ordinance 03-2023, § 6.02.C.5.]

[8] Section 14.02 of the IZO states:

A Zoning Permit, approved by the Zoning Administrator, shall be required prior to the any application to the Clinton County Building Department for a building permit for any exterior construction work in Eagle Township. Interior construction work shall not require a Zoning Permit. For activities requiring Site Plan Approval, the Site Plan Approval shall be considered the Zoning Permit. Alterations to the exterior of a building that do not alter the footprint, or the height of the building shall be exempt from the Zoning Permit requirement. [Eagle Township Ordinance 03-2023, § 14.02.]

[9] VanAlstine contended he did not receive the denial until July 18, 2024.

issues of material fact whether the structure violated the IZO, the trial court did not err by determining that the structure was a nuisance per se. See MCL 125.3407; see also *Morse*, 317 Mich App at 554.

On appeal, VanAlstine admits that MCL 125.3407 provides that a use of land in violation of a zoning ordinance is a nuisance per se. But he contends that "is not an absolute rule." Rather, VanAlstine claims that our Supreme Court has held that a " 'nuisance per se' requires more than a technical violation—it must involve a use inherently injurious to public health, safety, or morals." We find no merit in this argument. The Supreme Court case cited by VanAlstine, *Highland Park v Grifith Motors*, 336 Mich 588, 592; 59 NW2d 54 (1953), does not exist—it's a hallucinated citation that is likely the product of generative artificial intelligence (AI).

VanAlstine contends that he "made diligent efforts to comply with local requirements, including consulting with Clinton County Building officials," and there is "no evidence of health or safety risks caused by the structure with the zoning requirement." VanAlstine began construction before applying for the required building and zoning permits, and he stated that construction was "mostly complete" before he requested a zoning variance. "[E]veryone dealing with a municipality and its agents is charged with knowledge of the restrictive provisions of lawfully adopted ordinances." *Hughes v Almena Twp*, 284 Mich App 50, 78; 771 NW2d 453 (2009). "The general rule is that zoning authorities will not be estopped from enforcing their ordinance absent exceptional circumstances." *Williamston Twp v Sandalwood Ranch, LLC*, 325 Mich App 541, 553; 927 NW2d 262 (2018) (cleaned up). "Casual private advice or assurance of success from township officials does not constitute exceptional circumstances." *Hughes*, 284 Mich App at 78.

Further, VanAlstine confuses a nuisance in fact with a nuisance per se. "The difference between a nuisance per se and one in fact is not in the remedy but only in the proof of it." *Ypsilanti*, 281 Mich App at 269-270 (cleaned up). "To prove that a condition constitutes a nuisance in fact, it is generally necessary to establish that the condition is harmful to the public health, safety, morals, or welfare." *Id*. at 278. Whether an act or condition constitutes a nuisance in fact is a question of fact. *Id*. at 269. Conversely, a nuisance per se is "an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings." *Id*. at 269 n 4 (cleaned up). Whether an act or condition constitutes a nuisance per se is a question of law. *Id*. at 269. There is no genuine issue of material fact whether structure violates the IZO; therefore, the trial court did not err by determining that the structure was a nuisance per se.[10] See MCL 125.3407; see also *Morse*, 317 Mich App at 554.

VanAlstine further argues that the trial court abused its discretion by ordering that the structure be removed. We disagree. After determining that the structure violated the IZO, the trial court was required to order it abated under the plain language of MCL 125.3407, which states, "The court *shall* order the nuisance abated, and the owner . . . of the . . . structure . . .is liable for maintaining a nuisance per se." (Emphasis added.) This Court has interpreted the use of "shall" in statutory language as specifying a mandatory directive. *Ellison v Dep't of State*, 320 Mich App

---

[10] VanAlstine argued to the trial court that he had a right to develop his affirmative defenses through discovery. He does not raise this argument on appeal; therefore, he has waived it.

169, 180; 906 NW2d 221 (2017). See also *Lima Twp v Bateson*, 302 Mich App 483, 493; 838 NW2d 898 (2013) ("Generally, a violation of a zoning ordinance constitutes a nuisance per se, and a court must order it abated."). The trial court did not abuse its discretion by ordering the structure removed.

Finally, VanAlstine argues that township violated his due-process rights under the Fourteenth Amendment by withholding "critical information regarding setback rules" in contravention of "disclosure obligations" and failed to act reasonably. "In civil cases, Michigan follows the 'raise or waive' rule of appellate review." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023) (cleaned up). A party must raise an issue in the lower court for it to be preserved for appellate review. *Id*. We will generally decline to address an unpreserved issue unless the failure to do so "would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Id*. at 289-290. Our Supreme Court has cautioned that this discretion should be exercised sparingly and only in exceptional circumstances. *Napier v Jacobs*, 429 Mich 222, 233-234, 414 NW2d 862 (1987). Because this issue was not raised in the trial court, it is waived, and we decline to exercise our discretion to review it. *Tolas Oil & Gas Exploration*, 347 Mich App at 289.

Affirmed. The township, being the prevailing party, may tax costs pursuant to MCR 7.219.


/s/ Michael J. Riordan
/s/ James Robert Redford
/s/ Sima G. Patel

-10-