YPSILANTI CHARTER TOWNSHIP v KIRCHER

Docket No. 277922. Submitted September 9, 2008, at Lansing. Decided October 9, 2008, at 9:00 a.m.

Ypsilanti Charter Township brought an action in the Washtenaw Circuit Court against David Kircher that included a nuisance-abatement count related to the discharge of raw sewage and numerous violations of township codes at the Eastern Highlands apartment complex, which Kircher owned. The court, David S. Swartz, J., declared the apartment complex a public nuisance and entered a series of orders relating to abatement of the nuisance. The court eventually appointed Barnes & Barnes as receiver for the property. After Judge Swartz disqualified himself, the case continued before Donald E. Shelton, J. The receiver moved for payment of the expenses it incurred repairing the property and remedying the violations. The court ordered Kircher to pay the receiver and granted the receiver a lien on the property. The payment ordered included a 25 percent markup on labor, materials, and supplies. Kircher did not pay the receiver, and a judicial sale of the property followed, with the receiver purchasing the property. The court confirmed the judicial sale, concluding that it had properly ordered a judicial lien in the receiver's favor because a receiver may be compensated out of funds and property in a court's custody and that the receiver had been entitled to foreclose the lien. The court also ordered Kircher to pay the township's costs and attorney fees. Kircher appealed.

The Court of Appeals *held*:

1. Sufficient evidence existed for the trial court to declare the apartment complex a public nuisance. The raw-sewage discharge and contamination, along with the fire-code violations that Kircher stipulated, posed clear and immediate risks to the general health, safety, and welfare.

2. Placement of the apartment complex into receivership was not an unconstitutional taking of Kircher's property without just compensation. Because the apartment complex constituted a public nuisance, the trial court was constitutionally authorized to take steps toward abating the nuisance conditions. Under the nuisance exception to the prohibition of unconstitutional takings, compen-

sation is not necessary when the plaintiff exercises its legitimate police power to abate a public nuisance on the defendant's property.

3. The trial court did not abuse its discretion by appointing a receiver. While appointment of a receiver is a remedy of last resort, it is appropriate when other attempts have failed and a property owner has repeatedly refused to comply with the court's orders.

4. The trial court abused its discretion by appointing a receiver that was not disinterested and by delegating to the township the responsibility of choosing the receiver. The power to appoint a receiver belongs exclusively to the circuit court. Since the receivership has already been dissolved, however, there is no lasting error that can be remedied on appeal.

5. The trial court did not abuse its discretion by ordering Kircher to pay all costs related to the cleanup and remediation of the raw-sewage contamination, the repair and correction of the fire-code violations identified, and the repair and abatement of any property-maintenance-code violations that actually caused or contributed to the public nuisance.

6. The trial court abused its discretion by ordering the receiver to do anything necessary to make the premises economically viable and by ordering Kircher to pay costs unrelated to the repair or abatement of actual nuisance conditions. The mere fact that a condition violates a local ordinance does not make it a public nuisance. A trial court cannot enjoin or order abatement of such a condition unless it is independently established that the condition constitutes a nuisance. To prove that a condition is a nuisance in fact, it is generally necessary to establish that the condition is harmful to the public health, safety, morals, or welfare. With regard to some of the expenses approved in this case, the trial court must determine on remand whether the repair or expenditure was necessary to abate an actual nuisance condition and, if so, whether the expense was reasonable and justified.

7. Receivers have a right to compensation for their services and expenses, but a receiver's specific rate of compensation must be reasonable and not excessive. The 25 percent markup the trial court awarded was excessive.

8. The trial court erred by granting the receiver a lien against the apartment complex in the amount of the judgment, allowing the receiver to foreclose that lien, and confirming the judicial sale of the property. A circuit court may abate a public nuisance at the property owner's expense. Moreover, a receiver's fees and compensation may be paid from the property or funds in receivership. No

authority exists, however, for a court to impose a lien on real property to secure the amount incurred to abate a general public nuisance under MCL 600.2940 or to secure fees and compensation due a receiver. Costs incurred to abate a public nuisance under MCL 600.2940 must be collected in the same manner as damages and costs are collected on execution. MCL 600.6004 provides that executions against real property may occur only after execution has been made against the personal property of the judgment debtor, which the receiver did not do in this case. A judgment for unpaid fees and compensation due a receiver must also be collected in the same manner as damages and costs are generally collected on execution. The receiver is not entitled to an equitable lien because it has an adequate remedy at law. Moreover, the lien imposed in this case did not qualify as a judgment lien.

9. The trial court did not abuse its discretion by granting the township attorney fees. The township incurred substantial legal expenses as a result of Kircher's unlawful conduct.

*Affirmed in part, vacated in part, and remanded for further proceedings.*

1. NUISANCE — ABATEMENT OF NUISANCES — CONSTITUTIONAL LAW — TAKINGS — JUST COMPENSATION — POLICE POWERS.

The exercise of legitimate police power to abate a public nuisance is an exception to the constitutional prohibition against taking private property for public use without just compensation (US Const, Am V; Const 1963, art 10, § 2).

2. LIENS — REAL PROPERTY — NUISANCE — ABATEMENT OF NUISANCES — AUTHORITY OF COURTS.

A court may not impose a lien on real property for the purpose of securing the amount incurred to abate a general public nuisance; costs incurred to abate a general public nuisance must be collected in the same manner as damages and costs are generally collected on execution (MCL 600.2940[4], 600.6001 *et seq.*).

3. LIENS — REAL PROPERTY — RECEIVERS.

A receiver is not entitled to a foreclosable lien in the amount of its outstanding fees and compensation; a judgment for unpaid fees and compensation due a receiver must be collected in the same manner as damages and costs are generally collected on execution (MCL 600.6001 *et seq.*).

*McLain & Winters* (by *Dennis O. McLain* and *Angela B. King*) for Ypsilanti Charter Township.

*George E. Ward* for David Kircher.

*Roberts and Freatman* (by *Ellis B. Freatman, III*) for Robert Barnes.

Before: CAVANAGH, P.J., and JANSEN and KELLY, JJ.

JANSEN, J. Defendant, David Kircher, appeals by right the circuit court's order confirming the judicial sale of his property, commonly known as the Eastern Highlands apartment complex (Eastern Highlands), to receiver Robert Barnes.[1] Defendant contends that the circuit court erred by granting the receiver a lien against Eastern Highlands, by allowing the receiver to foreclose that lien, and by confirming the subsequent judicial sale of Eastern Highlands to the receiver. In addition, defendant contends (1) that the circuit court erred by determining in the first instance that there were nuisances in need of abatement at Eastern Highlands, (2) that the circuit court unconstitutionally seized his private property without just compensation, (3) that the circuit court erred by appointing a receiver to abate the alleged nuisances, (4) that even if the receiver's appointment was proper, the circuit court nonetheless erred by approving several excessive and unnecessary expenditures by the receiver, (5) that the circuit court erred by granting attorney fees for plaintiff, and (6) that defendant's continued dispossession after the termination of the receivership constituted an additional unconstitutional taking of private property. We affirm in part, vacate in part, and remand this matter for further proceedings consistent with this opinion.

---

[1] Robert Barnes was not the receiver himself, but was instead the authorized representative of receiver Barnes & Barnes. Nonetheless, for purposes of convenience, we refer to him informally as the receiver throughout this opinion.

I

On or about October 13, 2004, Washtenaw County authorities discovered that there had been a sewage backup at Eastern Highlands and that defendant or his agents were pumping raw sewage from a containment area into a storm drain or catch basin that eventually led to the Huron River. After being contacted by the authorities, plaintiff sent its building director and plumbing inspector to Eastern Highlands on October 14, 2004. Plaintiff's officials informed defendant that his sewage-pumping operation was illegal, but it does not appear that defendant immediately stopped the pumping.

Plaintiff filed a complaint and emergency petition on October 15, 2004, seeking a temporary restraining order to enjoin defendant from pumping the sewage and requesting an order to show cause why Eastern Highlands should not be condemned and declared a public nuisance. With the complaint, plaintiff filed the affidavit of its building director, Ronald Fulton, in which Fulton averred that irreparable harm would result if the court did not enjoin defendant's sewage-pumping operation. Later that day, the circuit court entered an ex parte temporary restraining order, enjoining defendant from pumping raw sewage and permitting plaintiff to enter the premises and abate any immediate dangers.

In response to the temporary restraining order, defendant shut off all water service to the tenants of Eastern Highlands. Plaintiff therefore filed an emergency motion seeking an ex parte order requiring defendant to restore water service to his tenants. On October 16, 2004, the circuit court entered an ex parte order requiring defendant to immediately restore water service to the tenants of Eastern Highlands and permitting plaintiff to abate any additional dangers that might

arise "in the event the restoration of water service
. . . results in the threat of new sewage discharge . . . ."
A hearing was set for October 20, 2004.

At the October 20, 2004, hearing, several witnesses
testified concerning the nature, extent, and severity of
defendant's sewage discharge. Defendant admitted that
he had been aware that his employees were pumping
raw sewage into a storm drain or catch basin and
acknowledged that he was the sole owner of Eastern
Highlands. Upon conclusion of the hearing, the court
ruled:

> [T]he conduct of Defendants David Kircher and Eastern
> Highlands in failing to provide adequate sanitary sewage
> discharge facilities and discharging raw sewage into a
> storm drain, located on or near its property, which storm
> drain empties into the Huron River, constitutes an imme-
> diate clear and present danger to the health, safety, and
> welfare, of not only the residents of Defendants' apart-
> ments, but to the public at large.

The circuit court declared Eastern Highlands a pub-
lic nuisance and directed plaintiff to take all reasonable
steps to abate the nuisance caused by the sewage
backup and defendant's sewage-pumping operation.
Among other things, the court permitted plaintiff to
inspect "all common areas, storage rooms, maintenance
rooms, power plants, unoccupied apartment units, and
occupied units with permission of [the] occupants, for
contamination," to oversee "the immediate cleanup of
any and all unsanitary conditions," to evacuate any
areas or units in which "the contamination constitutes
an immediate health hazard to the occupants," and to
"prohibit further occupancy of the [a]ffected units or
buildings until the health hazard has been removed."
The court ordered defendant "to pay Plaintiff its costs
and attorney's fees . . . incurred in bringing and enforc-

ing this matter, subject to Court review of the reasonableness thereof" and noted that it would "[c]onsider ordering the appointment of a receiver for the property" if defendant did not comply with the terms of the order.[2]

On October 26, 2004, plaintiff filed an amended complaint, adding a count entitled "Public Nuisance, Fire, and Property Maintenance Code Violations." Plaintiff alleged that a fire had occurred in Building M at Eastern Highlands on October 22, 2004, and that firefighters had discovered several fire code violations at the premises, including the absence of smoke detectors and fire extinguishers and the absence of an operational fire hydrant on the premises. Plaintiff also alleged that its officials had inspected Eastern Highlands and had discovered numerous property maintenance code violations in several of the buildings and the common areas. Among other things, these alleged property maintenance code violations included inoperable doors, improper or broken doorjambs, inoperable thermostats, walls that were not caulked and that had separated from the abutting structure, leaking faucets, a bathtub that was not properly caulked, toilets that were broken or not properly attached to the floor, many doors and windows that were not weathertight, an improperly installed heater cover, holes in the drywall, a loose window that posed a danger of falling, trash and garbage strewn throughout the hallways, deteriorated roof shingles, missing roof flashing, numerous missing doors and windows, the presence of rodents and insect

---

[2] Defendant was subsequently charged with and convicted of discharging a dangerous substance into the waters of this state, MCL 324.3115(2) and (4). He was sentenced to five years in prison and was ordered to pay a $1 million fine. This Court has recently affirmed defendant's convictions and sentence. *People v Kircher*, unpublished opinion per curiam of the Court of Appeals, issued August 14, 2008 (Docket No. 275215).

pests, defective stairways and handrails, inoperable locks, unsafe sidewalks and parking areas, exposed electrical wiring, disconnected vents in the laundry room, and washing machines that drained onto the floor.

Plaintiff set forth specific citations of its property maintenance code for each of these alleged violations. Plaintiff also attached a diagram showing the exact location of each of the alleged violations. Plaintiff requested that the circuit court (1) "[d]eclare the subject property a public nuisance" because of violations of the Ypsilanti Charter Township fire code and property maintenance code, (2) "[o]rder the nuisance abated," (3) order the immediate installation of smoke detectors and fire extinguishers, (4) grant plaintiff the authority to enter and reinspect all interior and exterior areas of Eastern Highlands to ensure compliance with the applicable fire and property maintenance codes, (5) order defendant to pay plaintiff "all costs and attorney's fees incurred by [plaintiff] in the enforcement" of the fire and property maintenance codes, and (6) "in the event Defendants fail or refuse to pay such costs, allow [plaintiff] a Judicial Lien in the full amount of its expenses incurred, plus interest, which Judicial Lien may be filed with the Washtenaw County Register of Deeds and be foreclosed . . . ."

The same day, the circuit court entered an order directing defendant to appear at a hearing to show cause why the court "should not enter an Order declaring the property . . . [a] public nuisance" for the reasons stated in plaintiff's amended complaint. At the hearing, plaintiff's counsel presented a prepared order and remarked that he and defendant had agreed to its terms. Defendant agreed with the language of the proposed order as it related to the alleged fire code violations and

acknowledged that the fire code applied equally to the occupied and unoccupied apartment units at Eastern Highlands. Defendant also indicated that he "would have no problem" with the portion of the proposed order that dealt with violations of the property mainte- nance code "as long as it refers to occupied units . . . ." Defendant apparently did not believe that the property maintenance code applied to unoccupied units and indicated that he was "not sure that the Property Maintenance Code requires all units in every build- ing . . . to be ready for occupancy at all times even if [the units are] not for rent." He again conceded, however, that the fire code applied to occupied and unoccupied units alike, and also acknowledged that he had "no problem" with the proposed order as it related to "major violations" that affect the safety and integrity of the structure. Defendant indicated that he would agree to the proposed order as long as he could retain the right to object in the future to any of the alleged property maintenance code violations. Plaintiff's coun- sel agreed to this.

Following the hearing, the circuit court issued the proposed order, which was entitled "Order to Abate Nuisance." The order declared Eastern Highlands to be a public nuisance, directed defendant to immediately install the required smoke detection and fire suppres- sion equipment in his buildings, directed defendant to install the necessary fire hydrant in full working order, and ordered defendant to promptly "complete all re- pairs as required to those addresses listed in the Town- ship's inspection reports . . . ." The court authorized plaintiff's officials to enter and reinspect the premises in order "to determine compliance with the installation of the smoke detectors and fire extinguishers as re- quired above" and in order to ensure compliance with plaintiff's fire code and property maintenance code

generally. The court scheduled a review hearing and noted that it would consider the issue of costs and attorney fees at a later date. The court observed that if defendant failed to comply with the order, it would "consider the request . . . to appoint a receiver to arrange for and oversee the completion of all required repairs and installations at Defendant's expense."

At a subsequent review hearing, plaintiff's officials testified that defendant had not complied with the terms of the court's order, that he was still not in compliance with the township's fire and property maintenance codes, and that defendant had not cleaned up or remediated the soil that had been contaminated by the initial sewage discharge. Testimony indicated that defendant had not installed the required smoke detectors or fire extinguishers and had not installed the missing fire hydrant. Plaintiff's building director also testified about his concern that one of the walls at Eastern Highlands had deteriorated and was in danger of immediate collapse.

Following another review hearing, the circuit court entered an "Order for Continuing Nuisance Abatement," finding that defendant had "not completely cooperated or complied with the previous orders of this Court." The court denied plaintiff's requests for the appointment of a receiver and to hold defendant in contempt. The court again ordered defendant to install the missing fire hydrant, ordered defendant to clean up and remediate the contaminated substrate in the area of the storm drain, ordered defendant to complete a videotaped inspection of the sewage lines at Eastern Highlands, directed defendant to fix a previously identified broken window that posed an imminent danger of falling, and ordered defendant to repair the brick wall of Building E that was in danger of imminent collapse.

The court gave defendant specific time frames in which to complete these required repairs and installations. The court also ordered that all occupied units at Eastern Highlands "shall be brought into compliance as required in the Notices of Violation" that plaintiff's officials had issued to defendant earlier. The court noted that it "will not hesitate" to hold defendant in contempt or to appoint a receiver "in the future should this Court find Defendant not to be in compliance with this or any other orders . . . ."

Following yet another hearing, the circuit court entered an "Order Finding Defendant David Kircher in Contempt of Court and for Continued Nuisance Abatement." The court found that defendant still had not completed any of the required repairs and installations, ordered defendant to spend three days in jail for contempt of court, and scheduled an additional review hearing. The court noted that if defendant was not in compliance with the court's orders as of the date of the next hearing, "the Court will most likely appoint a receiver as Plaintiff requests."

At a review hearing in December 2004, the circuit court heard testimony from several of plaintiff's officials and from defendant himself. The testimony established that defendant still had not installed the missing fire hydrant, that defendant had not produced video footage of the sewer line, that defendant had not remediated the contaminated soil, that defendant had not repaired the collapsing wall at Building E, that defendant had not repaired the window that was in danger of falling, that defendant had not fixed or repaired any of the other conditions listed in the "Notice of Violations" that he had earlier received, and that defendant had not fully cooperated with plaintiff's requests to enter the premises for the purpose of

conducting inspections. Following the hearing, the circuit court entered an "Order for Continuing Nuisance Abatement and for Appointment of Receiver," which provided:

> [A]s a result of [defendant's] continuing refusal to obey the orders of this Court, which refusal has continued to jeopardize the health, safety, and welfare of the residents of Plaintiff Charter Township of Ypsilanti and the occupants of Defendant's premises by exposing them to violations of State and local fire codes, Plaintiff's Property Maintenance Code, and continued exposure to raw sewage contaminants, McKinley Properties or such other party as the township shall choose shall be and hereby is appointed Receiver over Defendant's property, Eastern Highlands Apartments. To serve until such time as the public nuisance has been abated or the further order of this court.

The order stated that "the Receiver shall attempt to make the premises economically viable, if possible, and shall maintain detailed records of the costs for time and material expended in furtherance of its appointed tasks." The order also provided that "upon completion of repairs, the Receiver is granted a lien against the subject property for all fees and cost invoices which have not been paid by Defendant Kircher." Finally, the order provided that defendant would be required to "reimburse Plaintiff its costs and attorney fees incurred in conjunction with obtaining Defendant's compliance with [plaintiff's] codes and ordinances in this action."

Following entry of the circuit court's December 2004 order, defendant hired an attorney, who filed objections and moved for reconsideration. The court entered an "Amended Order" on January 19, 2005, that more precisely defined the duties and responsibilities of the receiver. The amended order also provided that "in the event McKinley Properties is not willing to perform under this order, Plaintiff may return to this Court for

the appointment of an alternative receiver or such other relief as may be appropriate."

On January 25, 2005, plaintiff filed a "Motion for Appointment of Alternate Receiver," asserting that it had learned that "McKinley Properties does not wish to act as receiver under the terms and conditions of the order" and asking "that Barnes & Barnes be appointed receiver over the properties known as Eastern Highlands Apartments . . . ." Defendant opposed the appointment of Barnes & Barnes and argued that no receiver was necessary in this case.

In early February 2005, the circuit court entered an "Order Appointing Alternate Receiver," specifying that "Barnes & Barnes shall be, and hereby is appointed receiver over [defendant's] property, which is the subject matter of this lawsuit (a.k.a. Eastern Highlands Apartments) to act subject to and in accordance with the Court's order entered January 19, 2005, which expressly defines the duties and obligations of the receiver." The court also ordered that regular hearings would be held "to determine if charges are appropriate & reasonable for the court ordered repairs."

Also in early February 2005, the circuit court granted a preliminary injunction, enjoining defendant from evicting any of the tenants of Eastern Highlands and ordering defendant to "stay off Eastern Highlands property until further order except to remove his personal belongings immediately . . . ."

Defendant moved for reconsideration of the order appointing Barnes & Barnes as the alternative receiver, but the court denied the motion.

The circuit court held additional review hearings in early and mid-2005 and approved several of the receiver's expenses and invoices. The court also denied defendant's motion to terminate the receivership. Then, in

August 2005, Washtenaw Circuit Judge David Swartz disqualified himself from this case, and the matter was reassigned to Washtenaw Circuit Judge Donald Shelton.[3]

Judge Shelton held an extensive review hearing in early February 2006 for the purpose of reviewing the receiver's expenditures and invoices from May 2005 through December 2005. The court heard testimony from plaintiff's building director and from Robert Barnes, Jr., the representative of receiver Barnes & Barnes. The court also reviewed photographs of Eastern Highlands and admitted the receiver's invoices into evidence. The following day, the court heard the testimony of defendant Kircher himself. Defendant explained how he would have repaired or corrected several of the code violations at Eastern Highlands and testified that many of the repairs would have cost him less than the receiver had expended to perform the same jobs. Defendant admitted that although he had purchased a new fire hydrant for Eastern Highlands, he had never installed it as the court had ordered. Otherwise, defendant presented no additional testimony or evidence concerning the propriety or reasonableness of the receiver's expenditures.

The receiver then moved for payment and to terminate the receivership. On April 19, 2006, the circuit court entered a detailed "Opinion and Order and Findings of Fact and Conclusions of Law Regarding Receiver's Motion for Payment." The court summarized the background of the case and observed that it had taken extensive evidence and testimony at the various review hearings. The court ruled:

---

[3] Judge Swartz explained that he was not actually biased against defendant, but noted that he would disqualify himself in order to avoid the appearance of bias or impropriety.

[T]he charges sought by the receiver from May 2005 through December 2005 are reasonable and necessary and subject to payment from the Defendant. The improvements made were necessary to remedy code violations and/or remediate hazards to human life as evidenced by the testimony of the Building Inspector Ronald Fulton. Mr. Fulton's testimony was clear that prior to the appointment of a receiver his access to these buildings [at Eastern Highlands] and the specific units was obstructed by the defendant. After [Fulton] was permitted unfettered access into the buildings, he found a multitude of code violations. He testified that he spent a significant amount of time inspecting and re-inspecting the buildings. All of these inspections [revealed the need for] additional repairs to remedy the code violations. Therefore the receiver was charged with remedying the initial code violations and the newly discovered violations.

The repairs included the necessity of replacing all of the windows in the apartment buildings, repairing a significant amount of the plumbing, repairing the electrical wiring, and completing structural repairs of the walls which included dry walling of many units. In addition, many of the bathrooms in the units needed new equipment and a majority of units needed new kitchen equipment. The units were in such disrepair that demolition work was a necessity. Many of the entry doors to the units as well as doors within the units had to be replaced. The carpet and padding was so bad that it had to be removed in many of the units and was replaced in some of the units. The receiver completed necessary structural repairs to the exterior of the building[s] including removal of deterio-rated steps and walkways, removal of fencing and fence poles, and repairing chimneys and building mortar. The receiver also rented tens of dumpsters simply to remove accumulated debris and other unhealthy materials from the uninhabitable units and paid the costs of removal. The receiver then had to pay for the materials and labor to have those buildings boarded up to prevent further deterioration and potential liability. The receiver has expended great sums of money on permits, utility bills, maintenance,

eviction proceedings, and other legal proceedings. The receiver is entitled to reimbursement of all these fees which this Court finds were reasonable and necessary.

The Court also finds that the 25% markup fees are allowed based on Judge Swartz' April 22, 2005 Order . . . . This Court agrees with Judge Swartz' rationale for allowing these markups . . . .

* * *

Therefore, the Court orders that Defendant shall pay the initial $150,401.82 which was ordered to be paid by Judge Swartz and shall pay the additional $1,552,078.88 hereby approved by this Court. The total amount owed to the Receiver is $1,702,480.70. Payment is due forthwith and the receiver is granted a lien in that same amount.

The Court agrees with plaintiff that the terms and conditions of the receiver's appointment should be modified. The Court therefore orders that the receivership as to buildings E, F, G, H, J, K, L, and M is terminated. The cost of bringing these buildings up to code far exceeds the value of the buildings. These buildings have already been secured and boarded up and shall remain secured and boarded up. Water and gas to these buildings shall not be resumed without further order from this Court. The receiver's request to fence off this portion of the premises to prevent unauthorized access is also GRANTED.

The receivership for buildings A, B, C, D, N, P, and R, all of which are situated closest to LeForge Road is also terminated. The Court finds that the receiver has brought these buildings up to code and remediated the soil contamination and sewage discharge. A receivership is no longer necessary to protect the interest of the public or the tenants currently leasing those premises.

The Receiver's request to be appointed property manager for the apartment complex is GRANTED but limited to the 180 days following entry of this order.

Following the circuit court's ruling of April 19, 2006, plaintiff moved for reimbursement by defendant of its

costs and attorney fees incurred in this action. The motion stated that the "total costs and attorney fees incurred by Plaintiff in this action to date are $60,057.72." Further, the receiver filed a "Motion for Continued Exclusive Possession" of the Eastern Highlands premises. The circuit court entered an order providing that "Defendant David Kircher shall be prohibited from having any direct contact with the tenants at Eastern Highlands . . . ."

The receiver then filed a "Motion for Order to Sell Real Property," arguing that defendant had not paid the outstanding $1,702,480.70 and asking the court to order a judicial sale of the premises in order to raise the amount that was owing and due. Defendant responded by arguing that the receiver's lien was a judgment lien and could not be foreclosed. Defendant also argued that any sale of Eastern Highlands had to conform to the procedural requirements for selling real estate on execution.

In September 2006, the circuit court granted plaintiff's motion for costs and attorney fees. The court ordered defendant to pay plaintiff "the sums of $48,614.82 for attorney fees and $12,935.40 in costs, within 30 days of this Order. In the event defendant fails to pay such amounts, a lien shall be granted against the property at issue." The circuit court also ruled:

> The receiver in this case has petitioned the court to allow the property to be sold. The receiver and the plaintiff have a dispute as to lien priority. The court finds that the issue [concerning lien priority] is not ripe for decision and must be brought if, and when, the property is sold. However, the Court finds that the receiver may sell the property 30 days from the date of this order if all receivership payments, attorney fees and costs have not been paid.

After 30 days, when defendant still had not paid the receiver, the receiver commenced proceedings to sell the property. A judicial sale was conducted on November 30, 2006. The receiver was the only bidder and submitted a bid in the amount of $2,344,586.10. This amount included the $1,702,480.70 lien amount, as well as interest, taxes in the amount of $336,663.55 paid to prevent a tax foreclosure, utility expenses in the amount of $43,457.39, and other costs incurred by the receiver for maintaining the property between January 1, 2006, and the date of the sale. A sheriff's deed was executed, conveying absolute title to the property to the receiver pending a judicial confirmation of the sale.

On April 20, 2007, the circuit court entered an order "Confirming Judicial Sale." The order provided that the receiver's lien

> was not a judgment lien pursuant to ... MCL 600.2801 through MCL 600.2819. Defendant erroneously cites authority from the judgment foreclosure statutes in the Revised Judicature Act. The authority cited by defendant does not apply in this case. The lien in this case was ordered to protect the interest of the receiver pending the sale of the property.

The circuit court acknowledged that "courts may not create or impose a lien on real property absent an express agreement by the parties or other legal authority." However, the court nonetheless concluded that it "had legal authority to order a judicial lien in favor of the receiver in this matter" because "a receiver may be compensated out of funds or property in [the court's] custody." The court observed that defendant had not paid the receiver and that the receiver had consequently been entitled to foreclose its lien. The court granted the receiver's motion to confirm the judicial sale of the property. Thereafter, the circuit court again

ordered defendant to pay plaintiff's costs and attorney fees incurred in this matter, in the amount of $61,550.22 plus interest.

II

Defendant argues that the circuit court erred by declaring in the first instance that Eastern Highlands was a public nuisance. Plaintiff responds by arguing that there were conditions at Eastern Highlands that threatened the general health, safety, and welfare and that defendant actually stipulated to the circuit court's original order that detailed the nuisance conditions existing at Eastern Highlands.

A

Whether an allegedly injurious condition constitutes a nuisance per se[4] is a question of law. *Huang v Wildbrook Apartments*, 62 Mich App 340, 342-343; 233 NW2d 276 (1975); see also *Brown v Nichols*, 337 Mich 684, 689; 60 NW2d 907 (1953). However, whether an allegedly injurious condition constitutes a nuisance in fact[5] is a question of fact. *Brown*, 337 Mich At 689; see also *Beard v Michigan*, 106 Mich App 121, 124; 308 NW2d 185 (1981). " 'The difference between a nuisance *per se* and one in fact is not in the remedy but only in

---

[4] A nuisance per se is also known as a nuisance at law. *Bluemer v Saginaw Central Oil & Gas Service, Inc*, 356 Mich 399, 411; 97 NW2d 90 (1959). " 'A nuisance at law or a nuisance *per se* is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings.' " *Id*. (citation omitted).

[5] A nuisance in fact is also known as a nuisance per accidens. *Bluemer*, 356 Mich at 411. " 'Nuisances in fact or *per accidens* are those which become nuisances by reason of circumstances and surroundings, and an act may be found to be a nuisance as a matter of fact where the natural tendency of the act is to create danger and inflict injury on person or property.' " *Id*. (citation omitted).

the proof of it.' " *Bluemer v Saginaw Central Oil & Gas Service, Inc*, 356 Mich 399, 411; 97 NW2d 90 (1959) (citation omitted).

Nuisance-abatement proceedings brought in the circuit court are generally equitable in nature. MCL 600.2940(5). We review de novo the circuit court's equitable decisions, but review for clear error the findings of fact supporting those decisions. *Yankee Springs Twp v Fox*, 264 Mich App 604, 611; 692 NW2d 728 (2004).

B

Before the circuit court could take cognizance of plaintiff's complaint for nuisance abatement pursuant to MCL 600.2940, it was first required to determine that there was a nuisance in need of abatement. We conclude without difficulty that the raw sewage discharge and contamination at Eastern Highlands did indeed constitute a public nuisance. This condition was dangerous to human life. It imperiled the health, safety, and welfare of the tenants of Eastern Highlands and the other nearby residents. See *Bronson v Oscoda Twp (On Second Remand)*, 188 Mich App 679, 684; 470 NW2d 688 (1991). Beyond this, defendant stipulated the fact that the fire code violations identified at Eastern Highlands created a public nuisance. Defendant acknowledged in open court that he had no objections to that portion of the proposed order dealing with the identified fire code violations, and defendant conceded that the fire code applied to occupied and unoccupied units alike. A stipulation entered in open court is generally binding on the parties. *Kline v Kline*, 92 Mich App 62, 79; 284 NW2d 488 (1979). Thus, to the extent that the circuit court's original order was based on the raw sewage release and contamination and the identified fire code violations, it was proper. These conditions posed clear

and immediate risks to the general health, safety, and welfare. The circuit court did not err by declaring Eastern Highlands a public nuisance on these grounds. See *Bronson*, 188 Mich App at 684.

Contrary to plaintiff's position on appeal, defendant did not stipulate that the identified property maintenance code violations at Eastern Highlands created a public nuisance. The record reveals that defendant indicated that he would agree to the proposed order only as long as he could retain the right to object in the future to any of the alleged property maintenance code violations specified in the order. Plaintiff's counsel specifically agreed to this request by defendant. However, this does not change the fact that Eastern Highlands was properly declared a public nuisance by virtue of the sewage contamination and the fire code violations alone. Even in the absence of the property maintenance code violations, there still would have been sufficient evidence for the circuit court to declare Eastern Highlands a public nuisance.

III

Defendant next argues that the circuit court's placement of Eastern Highlands into receivership was an unconstitutional taking of his private property. We disagree.

A

We review constitutional issues de novo on appeal. *Wayne Co v Hathcock*, 471 Mich 445, 455; 684 NW2d 765 (2004).

B

Contrary to defendant's assertions, Eastern Highlands constituted a public nuisance, and the circuit

court was therefore constitutionally authorized to take steps toward abating the nuisance conditions. Defendant disregards the well-established nuisance exception to the prohibition of governmental takings. The federal and state constitutions both proscribe the taking of private property for public use without just compensation. US Const, Am V; Const 1963, art 10, § 2; *Adams Outdoor Advertising v East Lansing (After Remand)*, 463 Mich 17, 23; 614 NW2d 634 (2000).[6] However, the nuisance exception to the prohibition of unconstitutional takings provides that because no individual has the right to use his or her property so as to create a nuisance, "the State has not 'taken' anything when it asserts its power to enjoin [a] nuisance-like activity." *Keystone Bituminous Coal Ass'n v DeBenedictis*, 480 US 470, 491 n 20; 107 S Ct 1232; 94 L Ed 2d 472 (1987). Indeed, "Courts have consistently held that a State need not provide compensation when it diminishes or destroys the value of property by stopping illegal activity or abating a public nuisance." *Id.* at 492 n 22. Because plaintiff was exercising its legitimate police power to abate the public nuisance on defendant's property, no unconstitutional taking occurred. *Ypsilanti Fire Marshal v Kircher (On Reconsideration)*, 273 Mich App 496, 555 n 22; 730 NW2d 481 (2007).

IV

Defendant next argues that the circuit court abused its discretion by appointing a receiver to abate the alleged nuisance conditions at Eastern Highlands and by appointing a receiver that was not disinterested. Again, we disagree.

---

[6] The Taking Clause of the Fifth Amendment is substantially similar to the Taking Clause of the Michigan Constitution, *Tolksdorf v Griffith*, 464 Mich 1, 2; 626 NW2d 163 (2001), and the two provisions should generally be interpreted coextensively, see *Peterman v Dep't of Natural Resources*, 446 Mich 177, 184 n 10; 521 NW2d 499 (1994).

A

We review for an abuse of discretion the circuit court's decision to appoint a receiver. *Id.* at 523. An abuse of discretion occurs when the court's decision falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

B

Defendant had been repeatedly warned of his responsibility to clean up and remediate the raw sewage contamination at Eastern Highlands, and he had also been directed on several occasions to correct the identified fire code violations on his property. Even after repeated warnings and requests, however, defendant continued to defiantly refuse to remediate or correct any of these identified nuisance conditions. We recognize that the appointment of a receiver is a remedy of last resort and should not be used when another, less drastic remedy exists. *Ypsilanti Fire Marshal*, 273 Mich App at 530; *Hofmeister v Randall*, 124 Mich App 443, 446; 335 NW2d 65 (1983). However, the appointment of a receiver is appropriate when other attempts have failed and a property owner has repeatedly refused to comply with the court's orders. *Ypsilanti Fire Marshal*, 273 Mich App at 523; *Band v Livonia Assoc*, 176 Mich App 95, 105; 439 NW2d 285 (1989) (stating that the "appointment of a receiver may be appropriate when other approaches have failed to bring about compliance with the court's orders"). We cannot conclude that the circuit court abused its discretion by appointing a receiver in this case.

C

Defendant also argues that the circuit court abused its discretion by appointing a receiver that was not

disinterested and by delegating to plaintiff the responsibility of choosing the receiver in this case. We agree, but conclude that there is no lasting error entitling defendant to relief in this regard since the receivership has already been dissolved. Robert Barnes, the representative of receiver Barnes & Barnes, testified during at least one of the hearings before the circuit court that he could not work with defendant and that he and defendant did not get along. We fully acknowledge that Barnes & Barnes had previously been appointed as the receiver for other properties owned by defendant and had committed several improprieties in other cases by failing to obtain the court's permission before starting costly projects and by charging defendant for questionable and unnecessary repairs. We also acknowledge that a circuit court may not delegate the responsibility of choosing a receiver to one of the parties. Indeed, the "power to appoint a receiver belongs exclusively to the circuit court." *Ypsilanti Fire Marshal*, 273 Mich App at 528. However, the receivership in the instant case has now been terminated, and Barnes & Barnes is therefore no longer the court-appointed custodian of Eastern Highlands. In light of this fact, we conclude that there is no lasting error that this Court can remedy. See *id.* at 529; see also *In re Contempt of Dudzinski*, 257 Mich App 96, 112; 667 NW2d 68 (2003) (holding that an issue has become moot when the court is no longer able to fashion a remedy for the controversy).

V

Defendant argues that even if the receiver's appointment was proper, the circuit court nonetheless erred by approving several excessive and unnecessary expenditures by the receiver. We agree in part.

A

The circuit court's determination concerning the propriety and reasonableness of a receiver's expenses is treated as presumptively correct because the circuit court "has far better means of knowing what is just and reasonable than an appellate court can have." *Kurrasch v Kunze Realty Co*, 296 Mich 122, 124; 295 NW 583 (1941). We therefore review for an abuse of discretion the circuit court's decision to approve or disapprove the individual expenses incurred by the receiver. *Id.* An abuse of discretion occurs when the court's decision falls outside the range of reasonable and principled outcomes. *Maldonado*, 476 Mich at 388.

B

The receiver was originally appointed for the purpose of abating the nuisance conditions at Eastern Highlands, and was initially directed by the circuit court to perform only the minimum necessary repairs. Nevertheless, the circuit court ultimately permitted the receiver to complete numerous repairs and projects that were in no way related to abating the original nuisance conditions for which the receiver had been appointed. This is demonstrated in part by the circuit court's December 2004 order directing that "the Receiver shall attempt to make the premises economically viable . . . ."

Unlike the nuisance-abatement action in *Ypsilanti Fire Marshal*, the present action was not based on Michigan's Fire Prevention Code, MCL 29.1 *et seq.* Instead, this action was based entirely on alleged violations of the local fire and property maintenance codes and was brought pursuant to Michigan's general nuisance-abatement statute, MCL 600.2940, only. Circuit courts have broad equitable authority to abate

nuisances under MCL 600.2940. *Ypsilanti Fire Marshal*, 273 Mich App at 527 n 12. However, before proceeding to abate a nuisance under the terms of MCL 600.2940, a court must naturally first determine that a nuisance actually exists.

"The word 'nuisance' has been variously defined and is so comprehensive that its existence must be determined from the facts and circumstances of each case." *Ebel v Saginaw Co Bd of Rd Comm'rs*, 386 Mich 598, 606; 194 NW2d 365 (1972). However, at its core, "[p]ublic nuisance includes interference with the public health, the public safety, the public morals, the public peace, the public comfort, and the public convenience in travel." *Bronson*, 188 Mich App at 684.

> The essential element of a nuisance is a wrongful, continuing, impending danger to the lives or health of the public, or to the legitimate property or personal rights of private persons peculiarly subject to the danger. A condition that is so threatening as to constitute an impending danger to the public welfare is a nuisance. [19 Michigan Civil Jurisprudence, Nuisances, § 1, pp 62-63.]

See also *Garfield Twp v Young*, 348 Mich 337, 342; 82 NW2d 876 (1957) (listing cases describing various types of public nuisances).

The costs of clean up and remediation of the raw sewage contamination were necessary, as were the costs of repairing and correcting the identified fire code violations. The raw sewage contamination and the fire code violations constituted bona fide public nuisances because they endangered the general health, safety, and welfare of the tenants of Eastern Highlands. The circuit court did not abuse its discretion by ordering defendant to pay all costs related to the cleanup and remediation of the raw sewage contamination and all costs related to

the repair and correction of the identified fire code violations. *Kurrasch*, 296 Mich at 124.

Nor did the court abuse its discretion by approving the receiver's expenses incurred in the repair and abatement of those property maintenance code violations that actually caused or contributed to the public nuisance at Eastern Highlands. Code violations such as exposed live electrical wires, significant accumulations of trash and rubbish, insect and vermin infestations, falling bricks and windows, collapsing walls, and sanitary sewer leakages certainly posed substantial risks to the general health, safety, and welfare of the tenants of Eastern Highlands.[7] The circuit court acted within its discretion by approving the reasonable and necessary costs of repairing and correcting all serious property maintenance code violations of this nature.

Conversely, however, the court abused its discretion by ordering the receiver to do anything necessary "to make the premises economically viable" and by ordering defendant to pay costs that were unrelated to the abatement or repair of actual nuisance conditions. Many of the alleged property maintenance code violations at issue in this case were minor, did not immediately endanger the health and safety of the public or the tenants, and therefore did not cause or contribute to the public nuisance at Eastern Highlands. Code violations such as chipped paint, dripping faucets, improperly caulked bathtubs, improperly caulked windows, missing roof flashing, and small holes in the drywall simply did not rise to the level of public nuisance conditions. We fully recognize that these conditions constituted violations of the local property maintenance code. But the mere fact that a condition consti-

---

[7] This list is not intended as exclusive, but merely serves to provide examples of the types of major property maintenance code violations that constituted bona fide nuisance conditions in this case.

tutes a violation of a local ordinance does not make that condition a public nuisance, and the circuit court has no jurisdiction to abate or enjoin such a condition unless it is independently established that the condition constitutes a nuisance. See *Garfield Twp*, 348 Mich at 340; see also 58 Am Jur 2d, Nuisances, § 338, p 788 (observing that a court sitting in equity "will take jurisdiction when a violation or threatened violation of an ordinance amounts to a nuisance, not because the act is in violation of the ordinance, but because it is a nuisance").[8] Said another way, absent statutory authority for doing so, townships lack the power to classify violations of their ordinances as nuisances per se, and a court can therefore only enjoin such violations upon sufficient proofs that they constitute nuisances in fact. *Bane v Pontiac Twp*, 343 Mich 481, 494; 72 NW2d 134 (1955). To prove that a condition constitutes a nuisance in fact, it is generally necessary to establish that the condition is harmful to the public health, safety, morals, or welfare. See *Garfield Twp*, 348 Mich at 342.

We affirm the circuit court's approval of the initial $150,401.82 in expenses incurred by the receiver. The record establishes that these expenses, which were approved by both Judge Swartz and Judge Shelton, were necessarily incurred to abate bona fide nuisance conditions at Eastern Highlands. In contrast, the record simply does not provide sufficient detail to allow us to determine the appropriateness of the remaining $1,552,078.88, which Judge Shelton largely approved after the fact. Because we cannot

---

[8] It is true that certain violations of local ordinances enacted under the Michigan Zoning Enabling Act, MCL 125.3101 *et seq.*, are presumptively classified as nuisances per se. MCL 125.3407. However, the Ypsilanti Charter Township property maintenance code was not enacted under the Michigan Zoning Enabling Act.

determine the propriety of these remaining expenses on the record before us, we must remand this matter for further proceedings.

Before approving these $1,552,078.88 in expenses, the trial court was required to (1) determine whether each repair or expenditure was necessary to abate an actual nuisance condition and (2) then determine whether the expenses of abating that nuisance condition were reasonable and justified. Indeed, " '[t]o obtain approval by the court of an expenditure not previously authorized to be made, a receiver must show that the expense was a reasonable one . . . , that the amount paid is fair and reasonable, and that it has been actually paid in good faith.' " *Corell v Reliance Corp*, 295 Mich 45, 53; 294 NW 92 (1940) (citation omitted).

We vacate that portion of the circuit court's order that approves the receiver's expenditure of the remaining $1,552,078.88. We remand the case for a determination by the circuit court whether each property maintenance code violation in fact constituted an actual nuisance condition. If the circuit court properly finds on remand that a property maintenance code violation constituted an actual nuisance condition, then only the amount *reasonably and necessarily* incurred in correcting or abating that condition may be included in the corrected judgment amount. With respect to any property maintenance code violations that *did not* constitute actual nuisance conditions, the expenses incurred by the receiver must be *excluded* from the corrected judgment amount. To reiterate, it will be necessary for the court to disapprove and exclude from the total corrected judgment amount any expenses that were not reasonably and necessarily incurred by the receiver to abate or repair actual nuisance conditions at Eastern Highlands.[9] Only those expenses properly, reasonably,

---

[9] The charges incurred to correct the property maintenance code

and necessarily incurred to abate actual nuisance conditions at Eastern Highlands may be charged to defendant and included in the corrected judgment amount.

VI

Defendant next argues that the circuit court erred by allowing the receiver to charge a "25% mark-up on all expenditures." We agree.

A

We review for an abuse of discretion the circuit court's decision setting compensation for a receiver. *Fisk v Fisk*, 333 Mich 513, 517-518; 53 NW2d 356 (1952). An abuse of discretion occurs when the court's decision falls outside the range of reasonable and principled outcomes. *Maldonado*, 476 Mich at 388.

B

"Receivers have a right to compensation for their services and expenses . . . ." *Cohen v Cohen*, 125 Mich App 206, 215; 335 NW2d 661 (1983). However, a receiv-

violations *that did not independently constitute nuisance conditions* may not be included in the corrected judgment amount on remand. But this does not necessarily mean that the receiver may not collect the amounts reasonably and necessarily expended to repair or correct the non-nuisance code violations. On remand, and in the circuit court's discretion, the receiver may intervene and set forth a claim of quantum meruit for the amount of these otherwise-unrecoverable, non-nuisance-related expenses. In this way, the receiver might still collect from defendant any amounts reasonably and properly expended to fix or correct non-nuisance property maintenance code violations at Eastern Highlands. After all, defendant was under a duty to correct or repair these non-nuisance violations himself, and requiring the receiver to bear the expense of repairing these violations would result in defendant's unjust enrichment. See, e.g., *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 201; 729 NW2d 898 (2006).

er's specific rate of compensation must be reasonable and must not be excessive. *Id.*; see also *Fisk*, 333 Mich at 517-518. In the instant case, the circuit court allowed the receiver to charge a 25 percent markup on all labor, materials, and supplies. This was excessive, even in light of the circuit court's belief that the markup was necessary in order to attract a receiver to this particularly undesirable job. While we are disinclined to say definitively what amount of compensation would have been reasonable and justifiable, the 25 percent markup on all labor, materials, and supplies awarded in this case was simply too great. We vacate the circuit court's order allowing the receiver to charge a 25 percent markup on all labor, materials, and supplies.[10] We direct the circuit court to determine on remand a fairer and more reasonable amount of compensation for the receiver and to correct the amount of the judgment accordingly.

VII

Defendant also argues that the circuit court erred by granting the receiver a lien against Eastern Highlands in the amount of the judgment, by allowing the receiver to foreclose that lien, and by confirming the judicial sale of the property. We agree.

A

Whether a lien is authorized in a particular case is a question of law. We review questions of law de novo. *Cowles v Bank West*, 476 Mich 1, 13; 719 NW2d 94 (2006).

---

[10] This is not to say that a 25 percent markup on labor, materials, and supplies may not be warranted in other receivership matters. We simply conclude that a 25 percent markup was excessive in light of the unique and particular facts of this case.

B

It is true that the circuit court may abate a public nuisance at the expense of the property owner. MCL 600.2940(3); *Ypsilanti Fire Marshal*, 273 Mich App at 538. It is also true that a receiver's fees and compensation may be paid from the property or funds in receivership. *Fisk*, 333 Mich at 518; *In re Dissolution of Henry Smith Floral Co*, 260 Mich 299, 302; 244 NW 480 (1932). However, after reviewing the pertinent legal authority, we conclude that no lien on defendant's real property was authorized in this case.

The courts may not impose a lien on real property absent an express agreement of the parties or other legal authority. *Ypsilanti Fire Marshal*, 273 Mich App at 538. As this Court has previously observed, there is no legal authority allowing the circuit court to impose a lien on a property owner's realty for the purpose of securing the amount incurred to abate a general public nuisance under MCL 600.2940. *Ypsilanti Fire Marshal*, *supra* at 537.[11] Nor have we located any legal authority permitting the court to impose a lien on real property for the purpose of securing fees and compensation due a receiver. We acknowledge that unpaid receiver's fees

[11] As noted earlier, unlike the nuisance-abatement action in *Ypsilanti Fire Marshal*, the present action was not based on Michigan's Fire Prevention Code. Instead, this action was based entirely on Michigan's general nuisance-abatement statute, MCL 600.2940. It is true that liens are authorized under Michigan's Fire Prevention Code to secure the expenses of abating certain types of nuisances. MCL 29.16(1); *Ypsilanti Fire Marshal*, 273 Mich App at 537 n 17. Other specific statutes authorize liens for the expenses of abating particular nuisances as well. *Id.* at 537 n 18. However, none of these statutes is applicable in this case. There is quite simply no statute that authorizes liens for the expenses of general nuisance abatement under MCL 600.2940. Indeed, costs incurred to abate general public nuisances must be collected in the same manner as damages and costs are generally collected on execution. MCL 600.2940(4).

are in the nature of "administrative costs," which have first priority against the funds or property being held *in custodia legis*. *Henry Smith Floral*, 260 Mich at 302-303. But such "[a]dministrative costs are not at all of the nature of a lien . . . ." *Id.* at 302. We accordingly conclude that, although a court may first satisfy the administrative costs of a receivership out of funds actually held in the court's custody, a receiver is not entitled to a foreclosable lien in the amount of its outstanding fees and compensation.[12]

Costs incurred to abate general public nuisances under MCL 600.2940 must be collected in the same manner as damages and costs are generally collected on execution. MCL 600.2940(4); *Ypsilanti Fire Marshal*, 273 Mich App at 539. The procedure for collecting damages and costs on execution is described in chapter 60 of the Revised Judicature Act, MCL 600.6001 *et seq.* Under MCL 600.6004, executions against realty are permitted "only after execution has been made against the personal property of the judgment debtor that is in the county, and such personal property is insufficient to meet the sum of money and costs for which judgment was rendered." Because the receiver in this case did not first attempt to satisfy the judgment by execution against defendant's personal property, it was not entitled to execute against defendant's realty. MCL 600.6004.

---

[12] In *Henry Smith Floral*, the receiver's fees and compensation were readily payable out of funds raised through the foreclosure sale of an unrelated mortgage. Had the circuit court possessed similar liquid funds in the present case, the court could have simply paid the receiver's fees and compensation directly as an administrative cost rather than including the outstanding receiver's fees and compensation as an element of the judgment. See *Henry Smith Floral*, 260 Mich at 302. However, because the court in this case had no liquid assets from which it could directly pay the receiver's fees and compensation as an administrative cost, it was necessary for the court to enter a judgment for the receiver in the proper amount.

In the absence of any authority to the contrary, we similarly conclude that a judgment for unpaid fees and compensation due a receiver must be collected in the same manner as damages and costs are generally collected on execution. "Issuance of execution is the ordinary method of enforcing a legal or equitable judgment for the payment of money." 7 Michigan Pleading & Practice, Executions, § 49:1, p 304. Like the collection of costs incurred to abate public nuisances under MCL 600.2940, the collection of a judgment for unpaid receiver's fees and compensation must also proceed in accordance with chapter 60 of the Revised Judicature Act.

We note that the receiver was not entitled to an equitable lien in this case. "Equity will create a lien only in those cases where the party entitled thereto has been prevented by fraud, accident or mistake from securing that to which he was equitably entitled." *Cheff v Haan*, 269 Mich 593, 598; 257 NW 894 (1934). A party that has an adequate remedy at law is not entitled to an equitable lien. *Yedinak v Yedinak*, 383 Mich 409, 415; 175 NW2d 706 (1970). Here the receiver had an adequate remedy at law—namely, execution against defendant's personal or real property pursuant to chapter 60 of the Revised Judicature Act. Therefore, no equitable lien was warranted on the facts of this case.

Nor did the lien imposed on defendant's real property in this case qualify as a judgment lien pursuant to chapter 28 of the Revised Judicature Act, MCL 600.2801 *et seq*. The circuit court expressly stated that the lien in this case was not intended as a judgment lien. Moreover, even if the court had intended the lien to comply with the provisions of chapter 28, judgment liens may not be foreclosed. MCL 600.2819.

We vacate the lien, which the circuit court imposed on defendant's realty notwithstanding the absence of

an express agreement of the parties or any other legal authority. It is true that we are generally disinclined to set aside a foreclosure and sale "in the absence of fraud, accident, mistake, or significant irregularities." *Ypsilanti Fire Marshal*, 273 Mich App at 535. In this case, however, the irregularities were substantial. They were not " 'mere technical irregularities,' " as have been found in other cases. *Carpenter v Smith*, 147 Mich App 560, 568; 383 NW2d 248 (1985), quoting *Madill v Michigan Nat'l Bank*, 302 Mich 251, 255; 4 NW2d 538 (1942). Instead, the irregularities at issue here were fundamental defects that went to the very validity of the purported lien itself. In short, the lien granted in favor of the receiver in this case was entirely unauthorized by law. And because the lien was void, "there was nothing upon which foreclosure proceedings could operate." *Fox v Martin*, 287 Mich 147, 153; 283 NW 9 (1938). We set aside the foreclosure and sale, and vacate the circuit court's order confirming the sale as well.[13]

---

[13] After the circuit court determines a new and corrected judgment amount on remand, the receiver will first be required to attempt to execute that judgment against defendant's personalty. MCL 600.6004. The receiver will then be permitted to execute against defendant's realty, in accordance with the provisions of chapter 60 of the Revised Judicature Act, but "only after execution has been made against the personal property of the judgment debtor that is in the county, and such personal property is insufficient to meet the sum of money and costs for which judgment was rendered." *Id.* Any such execution against defendant's realty must conform exactly to the law governing the enforcement of judgments and may not proceed under the novel and erroneous "foreclosure" procedure concocted by the receiver and the receiver's attorneys. For instance, in the case of execution against defendant's realty, defendant must be afforded the right of redemption. MCL 600.6062. Also, in the case of execution against defendant's realty, any surplus proceeds remaining after satisfaction of the judgment must be paid over to defendant. MCL 600.6044. We are aware that property *in custodia legis* is not generally subject to execution. *Jensen v Oceana Circuit Judge*, 194 Mich 405, 411; 160 NW 620 (1916); see also 27 Michigan Law & Practice, Remedies, § 23, p 194. However, the receivership in this case has been

VIII

Plaintiff next argues that the circuit court erred by granting attorney fees to plaintiff. We cannot agree.

A

We generally review for an abuse of discretion a circuit court's grant of attorney fees. Findings of fact on which the court bases its award of attorney fees are reviewed for clear error; questions of law are reviewed de novo. *Stallworth v Stallworth*, 275 Mich App 282, 288; 738 NW2d 264 (2007). An abuse of discretion occurs when the court's decision falls outside the range of reasonable and principled outcomes. *Maldonado*, 476 Mich at 388.

B

"Michigan adheres to the general rule that attorney fees are not recoverable, either as an element of costs or as an item of damages, unless expressly authorized by statute, court rule, or a recognized exception." *Brooks v Rose*, 191 Mich App 565, 574-575; 478 NW2d 731 (1991). However, " '[r]ecovery has been allowed in limited situations where a party has incurred legal expenses as a result of another party's fraudulent or unlawful conduct.' " *Spectrum Health v Grahl*, 270 Mich App 248, 253; 715 NW2d 357 (2006), quoting *Brooks*, 191 Mich App at 575. Plaintiff was forced to incur substantial costs and attorney fees to prosecute this matter, which originally arose out of defendant's illegal and egregious discharge of raw sewage into a public storm drain. The matter then continued when defendant flaunted the circuit court's orders requiring

terminated, and defendant's property therefore will no longer be *in custodia legis* at the time of any future execution against it.

him to clean up and remediate the contaminated areas on his property, and when he refused to bring his buildings into compliance with applicable local ordinances. Plaintiff incurred substantial legal expenses as a result of defendant's unlawful conduct. *Spectrum Health,* 270 Mich App at 253. We cannot conclude that the circuit court's award of attorney fees for plaintiff fell outside the range of reasonable and principled outcomes. *Maldonado,* 476 Mich at 388.[14]

IX

Defendant lastly suggests that his continued dispossession after the dissolution of the receivership constituted an unconstitutional taking of private property. But as plaintiff points out in its brief on appeal, defendant has failed to brief the merits of this issue and has cited no authority in support of his assertion. An appellant may not simply announce a position on appeal and leave it to this Court to rationalize the basis for that claim. *Wilson v Taylor,* 457 Mich 232, 243; 577 NW2d 100 (1998). Defendant's failure to properly address the merits of his assertion of error constitutes an abandonment of this issue on appeal. MCR 7.212(C)(7); *Yee v Shiawassee Co Bd of Comm'rs,* 251 Mich App 379, 406; 651 NW2d 756 (2002).

X

We affirm the circuit court's order declaring Eastern Highlands to be a public nuisance. The discharge of raw sewage and the fire code violations at Eastern High-

---

[14] Defendant also appears to argue that the circuit court erred by granting costs for plaintiff. However, defendant has failed to brief this argument and has accordingly abandoned the issue on appeal. MCR 7.212(C)(7); *Yee v Shiawassee Co Bd of Comm'rs,* 251 Mich App 379, 406; 651 NW2d 756 (2002).

lands endangered the public health, safety, and welfare. We similarly affirm the circuit court's appointment of a receiver to oversee and implement the process of nuisance abatement. Finally, we affirm the circuit court's specific award of costs and attorney fees for plaintiff, and we affirm the circuit court's approval of the initial $150,401.82 in expenses incurred by the receiver.

We vacate the circuit court's approval of the remaining $1,552,078.88 in expenses incurred by the receiver. We also vacate the circuit court's order allowing the receiver to charge a 25 percent markup on all labor, materials, and supplies. Finally, we vacate the lien imposed against defendant's real property, set aside the foreclosure and sale, and vacate the circuit court's order confirming the sale.

On remand, the circuit court shall (1) redetermine which property maintenance code violations constituted actual nuisance conditions at Eastern Highlands (i.e., separate the minor property maintenance code violations from those that actually endangered the general health, safety, or welfare)[15] and (2) determine whether the expenses of abating these actual nuisance conditions were reasonable and justified.[16] After this is completed, the circuit court shall calculate a new and corrected judgment amount, which shall include only (1) the initial $150,401.82 in expenses incurred by the

[15] As noted previously, what constitutes a nuisance in fact is a question of fact. *Brown*, 337 Mich at 689. The establishment of a nuisance in fact generally requires some proof that a condition is dangerous to human life or that it otherwise imperils the general health, safety, or welfare. See *Bronson*, 188 Mich App at 684.

[16] We wish to make clear that the circuit court will not necessarily need to take new evidence on remand in order to comply with our directives. The circuit court "may utilize evidence and testimony already in the record and it need not duplicate such evidence and testimony." *Ypsilanti Fire Marshal v Kircher*, 480 Mich 910 (2007).

receiver, (2) any reasonable expenses of cleanup and remediation of raw sewage contamination that were not included in the initial $150,401.82, (3) any reasonable expenses incurred to abate actual fire code violations that were not included in the initial $150,401.82, (4) any reasonable and justified expenses of abating those property maintenance code violations that constituted actual nuisance conditions, (5) other necessary and reasonable amounts paid by the receiver for maintaining the property between January 1, 2006, and the date of the judicial sale, such as taxes and utility costs, and (6) reasonable compensation for the receiver in an amount less than the 25 percent markup that was initially permitted. Once the new and corrected judgment amount is calculated, the judgment may be collected on execution according to the proper methods only.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs under MCR 7.219, neither party having prevailed in full.