# STATE OF MICHIGAN

# COURT OF APPEALS

PATRICE SMITH and ALEAN LEWIS,

   Plaintiffs-Appellees,

v

AUTO-OWNERS INSURANCE COMPANY,

   Defendant-Appellant.

UNPUBLISHED
February 21, 2017

No. 329270
Macomb Circuit Court
LC No. 14-000069-NF

Before: GLEICHER, P.J., and MURRAY and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right the trial court's order of judgment entered in favor of plaintiffs following a jury trial in this action brought pursuant to the no-fault act, MCL 500.3101 *et seq*. We affirm.

On appeal, defendant first argues that the trial court erred in denying its motion for judgment notwithstanding the verdict (JNOV). We disagree.

This Court reviews de novo a trial court's decision on a motion for JNOV. *Dell v Citizens Ins Co of America*, 312 Mich App 734, 752; 880 NW2d 280 (2015). "In reviewing a motion for JNOV [this Court] must construe all evidence and inferences from the evidence in the nonmoving party's favor, and, if reasonable jurors could have honestly reached different conclusions, the jury verdict must stand." *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 605-606; 886 NW2d 135 (2016) (citations, footnotes and quotation marks omitted). "[A] motion for JNOV should be granted only when there was insufficient evidence presented to create an issue of fact for the jury." *Heaton v Benton Constr Co*, 286 Mich App 528, 532; 780 NW2d 618 (2009) (citation omitted).

Defendant contends that the record evidence established as a matter of law that plaintiffs engaged in fraud during their pursuit of first-party no-fault benefits. Specifically, defendant points to discrepancies in Patrice Smith's no-fault insurance policy application related to her address and employment status. Defendant also argues that plaintiffs fraudulently submitted forms for replacement services where, on the same days that they made claims for replacement services, plaintiffs were observed engaging in activities such as driving, cleaning, shopping, and caring for children. With respect to Alean Lewis, defendant asserts that she sought reimbursement for lawn care when she lived in an apartment.

-1-

During trial, the jury was presented with evidence explaining the discrepancies in Smith's policy application as well as Lewis's request to be reimbursed for lawn maintenance. For example, Smith testified that when she applied for no-fault insurance, she gave the agent her identification and vehicle registration, and as the insurance agent processed her application, he missed the change of address label on the back of her driver's license. According to Smith, she told the insurance agent about his mistake and she believed that the error was corrected. With respect to her employment status, Smith testified that the insurance agent did not inquire if she was employed, and that she was in her work uniform when she purchased the policy. Additionally, Lewis testified that she owns multiple apartment buildings, that she lived in one of the units, and that she was requesting lawn care reimbursement for a portion of lawn care related to her own personal space.

While defendant points to the surveillance evidence[1] as proof that plaintiffs engaged in fraud, this evidence, construed in plaintiffs' favor, does not conclusively establish that the replacement services statements plaintiffs submitted were fraudulent. The replacement services forms consisted of a calendar grid within which a claimant could circle various activities that were performed by others for the claimant's benefit. There is a key identifying several activities for which an individual might require assistance. On the days that Smith was surveilled, she was observed conducting daily activities such as driving, going to a restaurant, and visiting a medical facility and various stores. For the same days on the replacement services form, Smith stated that she needed assistance with dusting, laundry, dishes, meal preparation, grooming, and "other." In her own handwriting, Smith noted that "other" referred to the care of her three children, including taking them to and from school, feeding them, and helping them dress. Of particular note, Smith did not state on the replacement services claim forms that she required assistance driving or shopping on the days she was surveilled. Smith further explained at trial that as a single parent and the primary caregiver of her children, there were occasions when she had to drive, even while in pain, in order to take her children to school and to attend her physician-prescribed physical therapy. Notably, the surveillance investigator observed Smith moving slowly, shopping for a back brace, remaining in the car while sending her children into a store on an errand, and driving herself to a medical facility. On the basis of this evidence, reasonable minds could differ regarding whether plaintiffs committed fraud related to their application for no-fault benefits.[2] Where "reasonable jurors could have honestly reached

---

[1] Defendant also points to inconsistencies regarding Smith's ability to drive and care for her children that existed between (1) an August 29, 2013 recorded telephone conversation between Smith and Charles E. Bloomfield, an employee of defendant, (2) surveillance evidence taken of Smith on August 30, 2013, and (3) the documentation regarding replacement services that Smith completed. While these matters pertain to Smith's credibility, we note that it is well-settled that "[i]ssues of witness credibility are for the jury to decide." *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 544; 854 NW2d 152 (2014) (citation omitted).

[2] Additionally, following the five-day jury trial, as part of the special verdict form, the jury was asked whether either plaintiff had engaged in fraud in pursuit of their claims for no-fault benefits. The unanimous jury answered clearly in the negative. The jury had also been instructed on the applicable law of fraud as part of the trial court's final instructions.

different conclusions, the jury verdict must stand." *Hecht*, 499 Mich at 605-606 (footnote, citation and quotations omitted).

In support of its position, defendant cites this Court's decision in *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420; 423; 864 NW2d 609 (2014), arguing that fraud is established as a matter of law when surveillance evidence depicts a claimant performing in an able manner tasks for which they sought replacement services. In *Bahri*, the healthcare providers intervened in a first-party no-fault case to recover no-fault benefits payable to the named insured for medical services they provided after a motor vehicle accident. *Id*. at 421, 422. Reviewing the trial court's decision on the defendant's motion for summary disposition pursuant to MCR 2.116(C)(10), this Court concluded that the healthcare providers stood in the shoes of the named insured; therefore, where the named insured was precluded from recovering benefits under the terms of the no-fault policy after engaging in fraud, the healthcare providers were precluded from recovering payment as well. *Bahri*, 308 Mich App at 423-426.

In *Bahri*, the plaintiff was found to have engaged in fraud contrary to the terms of the applicable no-fault policy after she sought to recover benefits for replacement services that were performed during a 19-day time period preceding the motor vehicle accident. *Id*. at 425. Surveillance evidence in *Bahri* also confirmed that the "[p]laintiff was observed bending, lifting, carrying objects, running errands, and driving - on the dates when she specifically claimed she needed help with such tasks." *Id*. at 425. As a matter of procedure, we note that the *Bahri* case came to this Court following the trial court's grant of the defendant's motion for summary disposition. *Id*. at 423. Conversely, in this case, defendant's claims on appeal arise in the context of challenging the trial court's decision on a motion seeking JNOV following a five-day jury trial. Further, as noted above, in determining whether the trial court correctly denied defendant's motion for JNOV, we construe the record evidence in plaintiffs' favor, and where reasonable minds could differ, the jury verdict should be left undisturbed. *Hecht*, 499 Mich at 605-606. Finally, the types of inconsistencies established by the surveillance evidence in *Bahri* are not present in the instant case. Therefore, we conclude that defendant's reliance on *Bahri* is not persuasive, and the trial court properly denied defendant's motion for JNOV.

Defendant next argues that the trial court abused its discretion when it admitted evidence related to medical billing records and permitted the jury to consider claims for medical expenses where there was insufficient evidence regarding the reasonableness of those expenses. We disagree.

We review the trial court's ruling regarding the admission of evidence for an abuse of discretion. *Craig v Oakwood Hosp*, 471 Mich 67, 76; 684 NW2d 296 (2004). A trial court does not abuse its discretion when its decision falls within the range of reasonable and principled outcomes. *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 273; 761 NW2d 761 (2008).

Pursuant to MCL 500.3107(1)(a), personal protection insurance (PIP) benefits are payable for "[a]llowable expenses consisting of all *reasonable* charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." (Emphasis added.) Whether medical expenses are reasonable presents a question of fact for the jury. *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App

431, 448, 449; 814 NW2d 670 (2012); *Kallabat v State Farm Mut Auto Ins Co*, 256 Mich App 146, 151; 662 NW2d 97 (2003).

Defendant's challenge to the admission of the evidence focuses on how a plaintiff may establish that charges sought under the no-fault act are "reasonable" as contemplated by MCL 500.3107(1)(a). Specifically, defendant argues that the only method by which a plaintiff can establish the reasonableness of a medical charge is to compare that charge to the wholesale cost the provider paid to the seller of the product. Defendant then reasons that because one of plaintiffs' medical providers, Dr. Nazih Iskander, failed to produce records establishing his wholesale costs, plaintiffs could not establish the reasonableness of the charges. In support of its argument, defendant relies on this Court's decision in *Bronson*.

In *Bronson*, the plaintiff was a medical provider seeking reimbursement from the defendants, who were no-fault insurers. *Bronson*, 295 Mich App at 434, 435. At issue in *Bronson* was whether the defendant no-fault insurers could discover the wholesale costs of surgical implant products in challenging whether the costs charged for the supplies were reasonable pursuant to MCL 500.3107(1)(a). *Bronson*, 295 Mich App at 442. This Court concluded that "the no-fault act permit[ed] defendants to discover the wholesale cost [to the provider] of the surgical implant products for which the insureds were charged." *Id.* at 442-443. In the context of setting forth how a defendant no-fault insurer, conducting its "cost-policing function" under the no-fault act, may challenge the reasonableness of services and equipment provided to their insureds, the *Bronson* Court referred to an earlier decision of this Court, *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365; 670 NW2d 569 (2003) (*AOPP*). Specifically, the *Bronson* Court stated, in pertinent part as follows:

> While *AOPP* supports an insurer's practice of determining the reasonableness of a provider's charges for . . . products by comparing those charges to the amounts charged for those products by other, similar providers, *AOPP* does not suggest that this is the *only* permissible approach under the [no-fault] act.
>
> * * *
>
> Accordingly, defendants' ability to assess the reasonableness of provider charges is not limited to a comparison of customary charges among similar providers. [*Bronson*, 295 Mich App at 449, 450.]

The *Bronson* Court further recognized that once a lawsuit is initiated, a medical provider bears the burden of establishing the reasonableness of its charges, and "[t]he parties are free to introduce evidence to the fact-finder regarding the reasonableness of [a medical provider's] charges." *Id.* at 450.

> Plaintiff [medical provider] is free to argue that its charges are in line with those of other similar providers for the . . . products at issue . . . and defendants [no-fault insurers] may respond by asserting that plaintiff's markup over the average wholesale cost of those products renders the charges excessive. But

-4-

ultimately, the burden of proof is on the provider to show how and why the charges are reasonable.  [*Id.*]

The *Bronson* Court also recognized that in *AAOP*, this Court had expressly declined to set forth specific factors for a defendant no-fault insurer to consider when discerning whether a charge under the no-fault act is reasonable.  *Id*. at 449.  Concluding that the defendant no-fault insurers "were entitled to discover the wholesale costs of the surgical implant products for which the insureds were charged[,]" the *Bronson* Court further stated "explicitly" that its holding was limited to "the sort of durable medical-supply products at issue" in that specific case, given that such products can be "easily quantified."  *Id*. at 450, 451.  Accordingly, our close reading of *Bronson* demonstrates that it does not stand for the narrow proposition of law that defendant asserts.

In this case, employees of the Metro Pain Clinic and Affiliated Diagnostic of Oakland responsible for medical billing testified at trial regarding the specific method by which billing rates for medical services and supplies were determined.  For example, Noor Jaff testified that the charges Metro Pain Clinic submitted to defendant for medical services and equipment were reasonable and customary, explaining that when setting the billing rates, she contacted several other hospitals and doctors to ascertain what they were charging for similar equipment and services.  According to Jaff, Metro Pain Clinic's charges were in fact less than what other facilities charged.  Samira Bazzi from Affiliated Diagnostic of Oakland provided similar testimony.  In admitting the evidence of the charges for medical services and products provided to plaintiffs over defense counsel's objection, the trial court reasoned that the reasonableness of the charges for the medical services and products provided to plaintiffs was properly left to the trier of fact.  The trial court's determination was congruent with established case law, and both Bazzi and Jaff presented the jury with sufficient evidence to consider whether the medical expenses were reasonable.  Moreover, defense counsel was afforded the opportunity to cross-examine the witnesses regarding the reasonableness of the charges for medical services and products provided to plaintiffs.  Accordingly, the trial court's determination to allow the evidence fell within the range of reasonable and principled outcomes, and we discern no abuse of discretion.

In a related argument, defendant asserts that where Dr. Iskander failed to produce documents related to the costs incurred in acquiring goods that were then provided and billed to plaintiffs, the trial court abused its discretion when it permitted Dr. Iskander's video deposition de bene esse to be played to the jury.  Our review of the record did not yield any instance where defendant requested that the trial court decline to admit the deposition in its entirety on the basis that defendant argues on appeal.  Accordingly, where this issue was not raised before and determined by the trial court, it was not properly preserved for our review.  *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005); MRE 103(a)(1).  In any event, Dr. Iskander was not a party to the litigation, and the court rules do not provide the trial court with authority to sanction plaintiffs for Dr. Iskander's non-compliance with a subpoena.  See MCR 2.313(D) (authorizing the trial court, in response to a motion, to order sanctions against a party who does not comply with a discovery request); MCR 2.506(F) (authorizing the trial court

to sanction a party for failure to comply with a subpoena). On this record, we do not discern any error in the admission of Dr. Iskander's deposition at trial.[3]

Affirmed. Plaintiffs, as the prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Elizabeth L. Gleicher
/s/ Christopher M. Murray
/s/ Karen M. Fort Hood

---

[3] We also note that our review of the record did not reflect that defendant sought the requested information from Dr. Iskander any earlier in the lower court proceedings during the discovery process. The trial court also observed on the record that the medical bills at issue were readily available to defendant during the lower court proceedings.